THE PEOPLE, ETC., RESPONDENTS, *v.* JOHN D. LEE, IM-PLEADED WITH EIGHT OTHERS, APPELLANTS.

1. GRAND JURORS—POLAND BILL.—By the passage of the act of Congress, commonly called the Poland Bill, the number of names to be drawn from which a grand jury is composed, is in the discretion of the judge ordering the drawing.

2. REPEAL OF TERRITORIAL STATUTE.—That portion of the Territorial law which provided that eighteen persons only should be summoned, out of which a grand jury of fifteen should be formed, was repealed by the provisions of the Poland Bill.

3. EXCUSING GRAND JURORS.—Where persons summoned on a jury list are disqualified to sit as grand jurors, it is the duty of the court to excuse them and order other names to be drawn, to complete the panel.

4. INDICTMENT—PRESENTMENT OF, TO THE COURT.—The laws of Utah, in force prior to the adoption of the Penal Code, prescribed no form of indorsement on the indictment when the same was presented to the court. Neither was it necessary that any record of the finding of the indictment be entered in the minutes of the court.

5. PRESUMPTION FROM SILENCE OF THE RECORD.—Admitting that, as the law stood prior to the enactment of the Penal Code, that an indictment should be presented to the court by the foreman of the grand jury, and in their presence, it will be presumed that it was so presented if the record of the court shows nothing to the contrary.

6. People *v.* Idaho Bill, referred to and the doctrine affirmed.

7. TESTIMONY OF AN ACCOMPLICE.—A witness in a criminal prosecution is not incompetent on the ground that he is an accomplice with the prisoner on trial in the particular crime which is the subject of the indictment, and if the testimony of such witness is believed by the jury, the prisoner may be legally convicted upon it.

8. ACCOMPLICE—CORROBORATION OF TESTIMONY OF.—It is not necessary that the testimony of an accomplice should be corroborated in every circumstance that he details in evidence.

9. POWER OF JUDGE TO REVIEW FACTS.—The judge, in charging the jury, has the right to review the facts and state his opinions and conclusions therefrom to them. They are, however, the sole judges of the weight of the evidence and the credibility of the witnesses.

10. INSTRUCTIONS AS TO ACCOMPLICES.—It is not error for the court to charge the jury in respect to the testimony of accomplices. "That were such parties unworthy of belief, the law would not allow them to go upon the witness stand."

Appeal from the Second Judicial District Court.

Defendant was indicted, with others, for the murder of the Arkansas emigrants at Mountain Meadows, which event is commonly known as the " Mountain Meadow Massacre."

The facts involved in the appeal are given in the opinion of the court.

*W. W. Bishop*, for appellant.

The court disregarded the requirements of the statute, and did draw twenty-three men as grand jurors; thus rendering the drawing irregular. The law is mandatory in its terms, so far as it relates to the drawing and empaneling of grand juries. Stats. of Utah, 489; C. L. 55; *State* v. *McNamara*, 3 Nev. 70.

The defendant was entitled to have every formality of the law complied with in drawing the grand jury. *People* v. *Coffman*, 24 Cal. 234.

A grand jury, not lawfully drawn, cannot prefer an indictment. 24 Miss. 621.

The record shows that the indictment was not lawfully presented by, and filed in the presence of the grand jury.

It is as necessary to show by the record that the indictment was legally presented and filed, as it is to show the rendition and recording of the verdict in a case. 1 Whart. Am. Cr. Law, §§ 500, 501, and cases there cited.

The action of the court in allowing the motion of the attorney for the people to amend the record of the proceedings of said court, of the September term, A. D. 1874, so far as the same related to the presentment and filing of the indictment against the defendant, and ordering the said records of the September term, A. D. 1874, to be amended *nunc pro tunc*, on the 21st day of July, A. D. 1875, was unwarranted. The term having expired at which the said indictment purports to have been filed, the court had no jurisdiction or right to change the record, in the manner in which it was ordered by the court, and entered by the clerk. 1 Bishop's Cr. Pr. § 908; *Morrison* v. *Dapman*, 3 Cal. 255.

We claim that the verdict is contrary to the evidence, because there was not sufficient evidence introduced on the trial of the defendant, aside from the evidence of confessed accomplices, to justify a conviction of the defendant.

The evidence of the accomplices not being corroborated by any sufficient legal evidence, the same did not justify the jury in rendering a verdict against the defendant.

There being no sufficient legal evidence, the defendant was entitled to an acquittal. 1 Bishop's Cr. Pr. § 506, *et seq.*

The court erred in using the following language in said charge to the jury: " You are, however, the sole judges of the facts and of the credibility of the witnesses; and whatever I may say to you respecting the facts, although it may assist you in the consideration of the case, is not binding upon you." Because the court assumes to assist the jury in finding the facts and passing thereon.

It is the settled rule, that it is the province of the jury, unaided by the court, to say whether a fact is proved or otherwise. *People* v. *Dick*, 32 Cal. 213; s. c., 34 Cal. 663; *State* v. *Ah Fung*, 7 Nev. 148.

The court erred in using the following language to the jury in said charge: "John D. Lee stands before you charged with being a participant and leader in a most atrocious and unprovoked massacre of human beings."

The court erred in charging the jury as follows: "The evidence shows that the persons killed were emigrants, who had passed, with a number of wagons and many cattle, through the settlements of this Territory, and were about passing out of the Territory upon the deserts of the West, on their way to Southern California. Before beginning their journey over the wide deserts, they were recruiting their stock upon the varied rich grasses of Mountain Meadows. For several days a combination of Indians and white men had been making attacks upon them, but having failed in every effort at their overthrow, and being driven back, the resort was had to the basest treachery and deception to effect their destruction."

Courts, in their charges, should not directly or indirectly assume the guilt of the accused, nor use equivocal phrases, which may leave such an impression. In this case the assumption is direct, amounting almost to positive assertion, that the defendant is guilty, and also that the evidence is conclusive and sufficient. Hence we claim there is error therein. *People* v. *Williams*, 17 Cal. 142.

This case is one of great importance, as it approves of and affirms the decisions in the cases of: *The People* v. *Harley*, 8 Cal. 39; *The People* v. *Ramirez*, 13 Cal. 172.

In capital cases, judges ought to confine their instructions to the jury to a few plain principles of law. *People* v. *Gibson*, 17 Cal. 283; *People* v. *Ah Fung*, 17 Cal. 377; *People* v. *Dick*, 32 Cal. 213.

The court erred in using the language to the jury in said charge, where he says: "The testimony is overwhelming." Because the court thereby directs the jury to find a verdict of guilty against the defendant, without regard to how the jury might otherwise have considered the sufficiency of the evidence, or their ideas of the truth or falsehood of the witnesses.

It prevented the jury from determining from the evidence what facts, if any, had been established by competent evidence.

In criminal cases the court should, as a general rule, instruct the jury hypothetically, and not assign a conclusive effect to circumstances, or assume that such circumstances were proven.

The court erred in using the following language in its charge to the jury: "The admission of accomplices is fully justified by the necessity of the case, and there was not and could not have been any objection to their introduction."

Because, taken with other portions of the instructions, it assumes, and leads the jury to believe, that all that the accomplices testified to was true, and not to be questioned by the jury. The law knows no more of necessity than necessity

knows of law. *People* v. *Barry*, 31 Cal. 357; *People* v. *Leirson*, 16 Cal. 98.

The instructions of the court, taken as an entirety, assumes the guilt of the defendant, and has prejudiced the jury against the defendant, and prevented the defendant from having a fair trial. *People* v. *Williams*, 17 Cal. 142; *People* v. *Harley*, 8 Cal. 39; *People* v. *Ramisey*, 13 Cal. 172.

The court erred in instructing the jury that the testimony of the witnesses "who were participants in the massacre should be taken with great caution, if uncorroborated in a a material point by the other evidence." Because the unsupported statements and testimony of accomplices was not in any way competent to convict the defendant. This instruction permits the jury to convict upon the evidence of accomplices alone, provided they do so with caution. It is evident that this prejudiced the defendant's rights. Bish. Cr. Pr. §§ 506–512 and note.

The court erred in using the following language in said charge: " Were said parties unworthy of belief, the law would not allow them to be put upon the witness-stand."

*Sumner Howard*, District Attorney, and *Tilford & Hagan*, for the People.

The court did not err in overruling demurrer to the first and second pleas in abatement of the defendant. The indictment on which defendant was arraigned was found by a grand jury of fifteen qualified persons, duly drawn, summoned and impaneled, in strict accordance with the laws of the Territory applicable thereto, all of which appears on the face of said plea. *U. S.* v. *Reynolds*, 1 Utah, 226, 320; Poland Bill, § 4.

The court when it sustained the replication of respondent to defendant's third plea, had before it the indictment on which was the indorsement: "Filed, September 24, 1874, James R. Wilkins, Clerk." It then became and remained a record of the court. All presumptions favor the regularity and legality of a grand jury impaneled in the district court;

it was, therefore, incumbent on the party denying such regularity to produce testimony sustaining his plea; in the absence of any such testimony, the court acted rightly in sustaining the replication to such denial contained in defendant's plea C. L. Utah, 655.

In the assignment of errors in this case, it is insisted that the verdict is contrary to and unsupported by legal evidence, in this that there is no evidence of the commission of the said crime, aside from that of accomplices and accessories thereto. Admitting that the verdict did rest upon such testimony, of which, however, the record contains no proof and furnishes no presumption, it is not for that reason alone to be set aside. 3 British Crown Cases, 94; 2 Bishop's Cr. Pr. § 1081, and cases cited.

The verdict in this case, however, does not rest upon the testimony of accomplices, there was before the jury ample evidence by competent and unimpeached witnesses of appellant's guilt. See Oral Testimony, pp. 20, 24, 38, 43.

The deliberate and voluntary admissions of the defendant, made after the commission of the offense, are in many respects the strongest evidence of guilt. The instructions of the court that such admissions may be taken by the jury as evidence of guilt, coupled with the modifications made by the court, contain the law, and were certainly not unfavorable to the defendant. 1 Whart. Am. Cr. Law, § 683; 1 Arch. Cr. Pr. & Pl. (Waterman,) 405, 406; see transcript, 52.

At common law a judge was allowed to charge in respect to facts, and express his opinion as to the weight of evidence. 27 Cal. 513; 10 Pick. 252; 21 Wend. 526, 550; 36 Cal. 266; 1 Bishop's Cr. Pr. § 981, and cases cited; Hittill's Digest, Cal. § 17, art. 6.

There was a record of the indictment having been presented in open court, made in the journal and minutes of the clerk. The motion of the district attorney, Carey, was therefore unnecessary, and the correction of the journal entry was wholly immaterial. Admitting, however, that the original entry on

the journal was insufficient, still it will be presumed that the indictment was presented in open court in the presence of the jury, though that fact is not indorsed on the indictment, if the record shows nothing to the contrary. 27 Cal. 65; 17 Cal. 371; 13 Fla. 651; C. L. 655.

An entry of the clerk, inadvertently omitted, may be made nunc pro tunc. 9 Wall. 736.

EMERSON, J., delivered the opinion of the court:

The defendant, with others, was indicted at the September term, 1874, of the Second District Court, for murder in the first degree, alleged to have been committed on the 16th September, 1857, at Mountain Meadow Valley in this Territory. The crime charged constitutes what is known and has passed into history as the "Mountain Meadow massacre."

The defendant Lee was the only defendant tried for the offense. His first trial was at the July term, 1875, when the jury disagreed and the case was continued. He was again placed on trial at the September term, 1876, found guilty of murder in the first degree and sentenced to be shot. Thereupon he appealed to this court.

The first error relied upon relates to the formation of the grand jury which found the indictment.

It appears that the judge had ordered the names of twenty-three men to be drawn from the box containing the names selected for that year, from which to form a grand jury for the then approaching term, it being the term at which this indictment was found. The appellant insists that this was irregular.

The jury, as finally impaneled, consisted of fifteen, the number required by the Territorial statute. C. L. 1080.

The law of Congress, under which juries both grand and petit are selected in this Territory, provides that such a number of names shall be drawn, from which the juries, both grand and petit shall be formed, "as may have previously been directed by said judge." C. L. 55. This first drawing is previous to the term of the court for which they are drawn to

serve. The law referred to further provides that, if during the term additional names are required for the formation of a jury, resort shall be had to another drawing from the general list, and if it should happen, as it will, may, and most always does, that the attendance of those last drawn cannot be obtained in a reasonable time, other names may be drawn in the same manner until the requisite number is obtained.

This occasions frequent, annoying and occasionally protracted delays in the business of the court. Take this very case for an example. In the first instance the judge ordered the names of twenty-three men to be drawn, and the record shows that a jury of fifteen was not obtained from this number, and resort was had to subsequent drawings under this law. Thus the time of the court and its officers was taken up for three full days before the requisite number of qualified persons was obtained. The number to be drawn in the first instance was left wholly discretionary with the judge. That portion of the Territorial law which provided that eighteen men only should be summoned, out of which a grand jury of fifteen shall be formed, was repealed or disaffirmed by the provisions of the Congressional act referred to. The action of the court excepted to was clearly the exercise of a discretionary power, in which there was no error. In this connection, the appellant assigns as error the action of the court in excusing certain of the persons first drawn, and the drawing and summoning of others to complete the panel. A complete answer to this objection is found in the fact that the record shows that three persons were excused for the reason that they were disqualified to sit as grand jurors, and their places, or sufficient of them to complete the panel, were filled in the manner provided by law.

The indictment upon which the appellant was arraigned was found by a grand jury of fifteen qualified persons, duly drawn, summoned and impaneled in strict accordance with the law relating to grand juries.

The next point relied upon by the appellant, and which is

The People, etc., v. John D. Lee et al.

claimed as error, is that the record shows that the indictment was not lawfully presented by and filed in the presence of the grand jury.

The only provision in the statute upon this subject is, that when an indictment is found, the foreman shall "indorse thereon the words, to-wit, 'a true bill,' and officially sign his name to said indorsement, and also note, or cause to be noted, on the bill of indictment, the name or names of the witnesses upon whose evidence it was found," C. L. § 1076, and it shall then "be presented to the court, who may correct mistakes that do not prejudice the trial." C. L. § 2248.

The indictment in this case bears the following indorsement: "Filed, September 24, 1874; James R. Wilkins, clerk." The record of that date contains the following recitals: "Bills of indictment presented. On this day the grand jury appeared at the bar of the court in charge of the United States Marshal, and presented their bills of indictment against," aside from certain blanks partially filled with figures, probably denoting file numbers, and the words "for the crime of," and following them the names of the defendant and others charged with him for the crime of murder.

It is the custom in our courts not to record the names of those against whom bills of indictment are found, until the parties charged are under arrest. This is a wise and judicious practice. The records of the court are public, and as such are subject at all times to the inspection of all those who may desire to inspect them. It is not unfrequent that the first step taken in the prosecution for a criminal offense, is that instituted before the grand jury. All the proceedings in the court must be public, and if the clerk should be required or allowed to record in full the names of those against whom indictments are found at the time the grand jury presents them in court, one of the objects in imposing secrecy upon the grand jury would be thwarted and rendered of no practical importance. Persons guilty of crime, and not under arrest, either through the knowledge thus obtained by themselves,

or through the agency of friends and those interested in their behalf, would be informed that proceedings were in train against them, and enable them by flight or concealment to elude the officers of justice, and often to escape punishment entirely.

It appears that the district attorney, at the next or July term, following the one at which the indictment was presented, moved that the record of the former term be amended *nunc pro tunc*, as is stated, so as to make the facts of the presentment more fully appear of record. The motion was granted. This is assigned as an additional ground of error. From what is disclosed in the record, there can be no doubt but what the indictment was presented by the grand jury in open court, and the amendment was unnecessary. If, however, the court thought that there had been some omission on the part of their clerk, in failing to record some of the details of the presentment, he had an undoubted right to order the minutes corrected so as to be in full and complete accordance with the facts.

The statute prescribes no form of indorsement, or record of the finding, to be made by the clerk. It simply provides that the indictment shall "be presented to the court." Even if it should be admitted that it was a matter of jurisdictional consequence that an indictment should in fact be presented by the foreman of the grand jury and in their presence, that the indictment was so presented will be presumed if the record shows nothing to the contrary. The court being one of general criminal jurisdiction, all intendments are in favor of regularity of the proceedings.

So far from the record in this case showing anything to the contrary, in our opinion, it does show, without the amendment, that the indictment was presented in court and in the presence of the grand jury.

The fifth assignment has just been disposed of in the case of *The People* v. *Idaho Bill.*

The sixth assignment raises the question of the sufficiency

of the evidence to justify the verdict. The appellant places his objection upon two grounds:

*First*—" Because there was not sufficient evidence introduced on the trial of the defendant, aside from the evidence of confessed accomplices, to justify a conviction."

The point of this objection, if there is any point in it, is that a defendant in a criminal case ought not to be convicted if any of the material facts which warrant a conviction rests upon the testimony of accomplices. In other words, the prosecution, he insists, must make out a case sufficient to justify a conviction independent of the testimony of accomplices. If this proposition were true there would be no occasion to use this class of witnesses at all.

It has long been a settled rule of evidence, that a witness in a criminal prosecution was not incompetent on the ground that he had been an accomplice with the prisoner on trial, in the particular crime which was the subject of the indictment, and it follows almost as a necessary consequence, that if their testimony is believed by the jury, the prisoner may be legally convicted upon it, as it is their peculiar province to determine upon the degree of credit to be attached to any competent evidence submitted to their consideration. There is nothing in this ground for the objection.

The second ground of the objection is, " that the evidence of the accomplices was not corroborated by any sufficient legal evidence."

All the evidence taken on the trial of the case has been brought by the bill of exceptions, and we have reviewed the sickening details of a most inhuman butchery, which it recites, to see if there existed any foundation for the objection urged. The result of this investigation is, that the testimony of those who were present and took part in it, not from any choice of their own, but upon compulsion of one sort or another, is corroborated in many of its material particulars by other and sufficient legal testimony. Even should it be held necessary that a witness of this class should be corroborated in some ma-

terial fact, it is clearly unnecessary that he should be con-
firmed in every circumstance which he details in evidence.
There was a sufficient corroboration of the witnesses, said to
be accomplices in this case, to satisfy the most stringent
holding upon this subject.

This brings us to the consideration of the seventh assign-
ment of error, and which arises out of a large number of ex-
ceptions to the judge's charge to the jury.

We deem it unnecessary to take up each exception and
review it, for the reason that they are all aimed at one point,
and the question presented by them is, to what extent in
criminal cases can the court review facts in his charge to the
jury.

The only statute in this Territory upon the subject is:
" The court shall instruct the jury on the law and equity in
the case, and give them such other instruction as may be
necessary." (C. L. § 2242.) This quotation is from the act
regulating the mode of procedure in criminal cases, and while
it may be difficult to determine just what is meant by this lan-
guage, one thing is evident, and that is, it does not abridge or
curtail the right of the court to express his opinion as to the
weight of evidence, as it existed at the common law.

The doctrine is laid down by PARSON, C. J., in the *Com-
monwealth* v. *Child*, (10 Pick. 252.) The language used in
the opinion is peculiarly applicable to this case, and we quote
from it.

" But it will be objected, that the judge may have said
many things tending to make the jury incline to one side or
the other: This would seem to raise the question, whether a
judge may reason upon the facts, and if he intimates to the
jury his own opinion of the evidence, whether this shall be
cause for setting aside the verdict? We know of no rule
requiring the judge to conceal his opinion. He is to comment
upon the evidence. Is he to do it by merely stating that one
witness says this thing and another says that? Has he not
power to say, this evidence is weak and that evidence is

strong? For myself, where the evidence on one side is nearly balanced by counter evidence, I endeavor to leave it to the jury to decide which scale preponderates; but if the evidence on one side is strong, compared with that on the other side, I think it my duty to make the jury comprehend that it is so. It is said the tendency of the judge's remarks was to affect the jury unfavorably to the defendant's side of the case. The next step will be, to move for a new trial on account of the expression of countenance of the judge. These things, if evils, are unavoidable. Confidence must be reposed in the integrity of the judge. If an unjust partiality is shown, the remedy must be in one of the modes pointed out in the Constitution. Though an undue influence may be exerted upon the jury by the manner of a judge, yet the law presumes intelligence in the jury; and if they perceive any improper attempt of the kind, they will be more likely to find a verdict against the opinion of the judge, than in accordance with it. Undoubtedly the manner of instructing the jury sometimes has an undue effect upon their verdict, but it results from the imperfection of the system. If the evidence in such case does not sustain the verdict, a new trial will be granted—there is no other remedy."

The decisions announcing a contrary doctrine, and to which counsel for the appellant has referred in support of his exceptions, are from States where the court was hampered and bound by some constitutional inhibition or statutory regulation. Most of them are from California, and there the courts are prohibited, by section 17, article VI. of the constitution, from charging juries with respect to matters of fact, but may state the testimony and declare the law. Even there the courts have decided that the constitutional inhibition above referred to " was intended to change the rule so as to leave the weight of evidence entirely to the jury, but judges may still, as formerly, state what facts are in evidence and what are not; or, in other words, they may state the evidence *pro* and *con.*, in view of which the existence of certain facts is affirmed or

denied, which includes the right to state to the jury that there is no evidence as to particular facts or issues when such is the case." *People* v. *King*, 27 Cal. 513.

Here the testimony was all upon one side, that of the prosecution. . We have been unable to discover any contradictions among the witnesses themselves. We think the testimony warranted the judge in saying that it was "overwhelming." He had correctly laid down the law as to the offense, and the measure of proof they should require before convicting the defendant. No exception was taken to anything contained in this portion of the charge. Throughout the whole charge he seems to have taken great caution, by repeated declarations, to impress upon the minds of the jury that they were the sole judges of the facts and of the degree of creditability to be given to the witnesses; that they were not bound by anything he might say as to the facts. The jury cannot have failed to have understood this perfectly. To aid them in arriving at a correct determination, the court gave them, in his own language it is true, and as it is always done, and not in the language of the several witnesses, a summary of the facts as established by the prosecution. The language used in doing this was warranted by the uncontradicted evidence for the people.

The exceptions which counsel for the defendant have urged the most strongly upon our attention are the tenth and eleventh, as numbered in his brief.

In support of the tenth he insists that " the unsupported statements and testimony of accomplices was not in any way competent to convict the defendant."

Just what counsel means is not clear. We are in doubt whether he means that no conviction can properly and legally be had in any case upon the uncorroborated testimony of accomplices, or whether he means that in this particular case it was not competent to convict the defendant, using the word " competent " in the sense of " sufficient." In either view of the case there is no ground for the objection. In a former

part of this opinion we have stated what is unquestionably the rule as to the competency of this class of witnesses. The grounds of the objection, whatever might be said of them as abstract propositions of law, have no foundation in fact as applied to this case. There was not a single witness of the class referred to, whose testimony was not corroborated in some material point by evidence free from all suspicion. The language quoted in the tenth exception does not warrant the conclusion drawn by counsel as the ground of the objection, and especially as in this connection, once speaking of this class of witnesses, the court instructed the jury that, " being corroborated in any material point by other evidence, their testimony is entirely sufficient to warrant a verdict in accordance therewith."

The eleventh exception grows out of the use of the following words in the instruction: " Were such parties unworthy of belief the law would not allow them to be put upon the witness-stand."

It will not only greatly facilitate our understanding of just what was meant by the use of this language, but will clearly demonstrate the impropriety and fallacy of severing a single phrase or sentence from its immediate connection in a charge given to a jury, and predicating an exception upon it, to review that portion of the charge in which the language was used, and is as follows: " The defense has introduced no witness or evidence to refute the testimony for the prosecution, but risks the whole case upon the hope to shake your confidence in the witnesses for the prosecution. Were these witnesses unworthy of belief? The most that could be said is that the testimony of a portion of the witnesses, (those who were participants in the massacre,) should be taken with great caution if uncorroborated in any material point by other evidence. Were such parties unworthy of belief the law would not allow them to be put upon the witness-stand. The admission of accomplices is fully justified by the necessity of the case, and there was not and could not have been any objection

to their introduction. Who else could tell what took place upon that bloody field but those who were present, willing or unwilling? After their introduction you are to weigh their testimony and sift the truth therefrom. Accomplices are not to be disbelieved simply because they are accomplices, but you are to weigh their testimony in connection with other evidence, and being corroborated in any material point by other evidence, their testimony is entirely sufficient to warrant a verdict in accordance therewith."

It will be noticed that a number of the exceptions relied upon are to be found in this portion of the charge; but, if considered in the connection in which they are given, as above quoted, it is clearly apparent that there is no ground for the the points made.

So far as the words which form the subject of the tenth exception are concerned, it seems impossible that the jury could have understood that the court was speaking of anything but the competency of the class of witnesses named, and had no reference to the creditability of the particular witnesses in this case, or to the sufficiency of the testimony offered by them. From the repeated declarations in the charge they cannot have failed to understand that the court left them the sole judges of the creditability of the witnesses and the sufficiency of the evidence. The right of the defendant to have the jury pass upon the facts in the case was carefully guarded and fully conceded.

Upon the whole record we see no error, and in our opinion the defendant was fairly and impartially tried, and was upon competent and sufficient legal evidence convicted of the crime for which he stood charged.

The judgment of the court below is affirmed.

SCHAEFFER, C. J., and BOREMAN, J., concurred.