STATE OF IOWA v. JOE STUTCHES, Appellant.

**Criminal law:** BURGLARY: EVIDENCE. The evidence on this prosecution for burglary is reviewed and held sufficient to sustain conviction.

1

**Same:** POSSESSION OF CO-CONSPIRATOR: EVIDENCE. Where there was evidence of a conspiracy to steal it was competent to show that the stolen goods were found in the possession of a co-conspirator.

2

**Same:** EXCLUSIVE POSSESSION OF STOLEN GOODS. To warrant a presumption of guilt from the possession of stolen goods the possession must have been exclusive; but exclusive possession may be the joint possession of two or more when they were acting in concert.

3

**Same:** POSSESSION OF STOLEN GOODS. Where it appeared that defendant and another had conspired to steal goods from a railway car, and soon thereafter a part of the stolen goods was found in the possession of each, and that the car had been broken open and a portion of the goods taken therefrom were afterwards found at defendant's home, the evidence justified the conclusion that defendant with others committed the larceny, and in doing so defendant was guilty of burglary.

4

**Same:** PRESENCE IN COURT OF STOLEN GOODS. Where the court charged the jury not to give any consideration to property in the court room claimed to have been stolen, but which was not offered in evidence, refusal to order the same removed from the court room was not erroneous.

**Same:** EVIDENCE: STOLEN PROPERTY. Where the wife of defendant, prosecuted for burglary from a railroad car, testified that certain goods were brought to her house by defendant the morning after the burglary, and there was other evidence to show the larceny of the goods from the car, admission of the goods in evidence when identified as part of the shipment was proper.

**Same:** ORDER OF PROOF. The order of the introduction of evidence is discretionary. Thus the admission of stolen property before identification was not erroneous, where it was subsequently identified.

**Same:** EVIDENCE: TIMELY OBJECTION. Objection must be interposed to evidence when it is offered. A party cannot sit by and allow evidence to be admitted without objection, and if not satisfactory have it afterwards excluded on motion.

**Same:** EVIDENCE: INSTRUCTION. Where the evidence disclosed that several cars apparently in possession of the same company had been broken into, but the only goods identified were shown to have been taken from a certain car, the jury should have been instructed that defendant could only be convicted for having burglarized the particular car from which the goods were stolen.

**Same:** BURGLARY: JOINT ACTS: EVIDENCE. The evidence is held to require submission of the question whether defendant and another were acting together when the burglary was committed.

**Same:** EVIDENCE: UNIDENTIFIED PROPERTY. Where there was no evidence identifying property found in the possession of one claimed to have acted jointly with defendant as having been taken from the burglarized premises, all evidence concerning such property should have been stricken on motion.

**Same:** DOCUMENTARY EVIDENCE: INTRODUCTION. Where a witness testified that he had charge of the billing and shipping of goods from a certain station, but had no personal knowledge of the facts except as disclosed by the records, not made by him, the foundation for the introduction of a copy of the bill of lading was not laid.

**Same:** INDICTMENT: OBJECTION TO SUBSTANCE AND FORM. Objection to an indictment, that it did not specifically describe the car broken

and entered, which was not raised until after the jury was sworn came too late to be available.

*Appeal from Polk District Court.*—HON. WILLIAM MCHENRY, Judge.

MONDAY, DECEMBER 15, 1913.

THE defendant, Joe Stutches, with Tony Poulik, W. Kaiakaitis, and John Ringva, were jointly indicted for the crime of burglary. Stutches pleaded not guilty but on trial was convicted. He appeals.—*Reversed* and *Remanded.*

*Royal & Royal* and *J. C. Picken,* for appellant.

*George Cosson, Attorney General,* and *John Fletcher,* Assistant Attorney General, for the State.

LADD, J.—I.  The offense charged is that the defendant, Stutches, with three others, broke and entered a certain car in the possession of the Chicago Great Western Railway Company with the intent to commit larceny therefrom. The evidence was such that the jury might have found a car of this company, No. 30394, was sealed January 27, 1913, between 5 and 6 o'clock in the afternoon; that contained therein were two cases of men's shoes which had been billed by McCune-Kelly Shoe Company to P. H. Johnson of Marshalltown, and one case containing rubbers for girls and women and some women's house slippers, billed by the same firm to W. O. Lewis of Marshalltown; and that, on the morning following, these three cases had been removed from the car. Several other cars were broken into and goods removed therefrom at about this time, and the theory of the state was that these offenses, with that charged, had been committed in pursuance of a conspiracy entered into by the defendant with Poulik,

1. CRIMINAL LAW : burglary : evidence.

Kaiakaitis, and Ringva.   Officers found men's and women's shoes, gloves, coffee, garden and flower seeds, sugar, butter, toilet articles, lemons, and a rug in the front room of the house of Ringva, between 9 and 10 o'clock in the morning of January 28th.   Ringva had fled, but his wife was there, as was Kaiakaitis, who attempted to escape to the attic, but, being stopped, was found to be armed with two thirty-eight-caliber revolvers.   Mrs. Ringva attempted to slip from her feet a pair of new shoes like those on the floor, and the next day her boy was found with a pair of tan shoes similar to those subsequently found at Stutches'.   The officers called twice at Stutches' house on the next day and there found four or five pairs of men's shoes and one pair of ladies' shoes, and also a new truss and two gray shirts.   The shoes were what would be called dress shoes rather than work shoes. ''One pair of men's shoes was new; the others had been worn.'' Also, ''one shirt was new and one had been worn slightly.'' A half barrel of sugar, one sack of crackers, and, out in a shed near the house, a sack of babies' shoes, tan colored, also were found.   Upon inquiry as to where he got the shoes, Stutches said, according to the evidence of the officers, that Kaiakaitis had brought the shoes there and compelled him to take them and threatened ''if he said anything about him he would shoot him.''   One of the officers testified that Mrs. Stutches did not care to talk, but said, in Stutches' presence, that she could tell but would not, and said that ''there was a lot mixed up in it and she would tell, if she had to.''   She told the same story of the shoes being brought and the threat and inquired who had informed concerning them.   Mrs. Ringva testified that between 8 and 9 o'clock in the morning of January 28th, Stutches brought the shoes and other materials found at her house in a wagon and placed them in her front room; that another accompanied him; that Stutches had been there on each of the three days prior to the night the car was broken and entered; and that at about 6 o'clock in the morning of the 28th Ringva left and had not been seen since.

Ralph McCune identified eleven pairs of men's shoes and several pairs of women's shoes and rubbers of those taken from the two houses as having been included in the three cases shipped by McCune-Kelly to Johnson and Lewis; but there was no specific identification of shoes found at Stutches' as being any of those included in these cases, and there was no identification of the other goods referred to as being those extracted from any of the other cars. Stutches testified in his own behalf that, at about 5 o'clock in the morning of January 28th, some one came to his house on the outside who looked like Ringva, and afterwards he found some shoes wrapped in a paper in the shanty back of the house, and that this was all he told the officers; that he did not say the man threatened to shoot him, but that he had heard some talk like that; that he started to his work about 6 o'clock on the morning of January 28th; and that he continued in the mine until between two or three o'clock in the afternoon; that he had not been at Ringva's place except on Sunday the 26th, having called for his wife; and that Poulik, Dunskey, and Kaiakaitis had brought the sugar to his house about the 1st of January and said that it was in payment for his wife's services in caring for his wife when she was sick. He denied ever having broken into a car either alone or in connection with others. A local groceryman remembered that Mrs. Stutches had purchased a box of crackers at his place about the middle of January and that she had bought a dollar's worth of sugar there about the first of January and 25 cents worth about the middle of that month. There was other evidence tending to show that the defendant was working in the mine at the time Mrs. Ringva claims he brought the goods to her house, and also evidence tending to show that he had theretofore been reputed among his neighbors a man of integrity.

The recitation of this evidence is a sufficient response to the contention that it was insufficient to sustain the verdict.

The defendant might have been found to have been in possession of the shoes recently stolen in hauling them to the

house of Ringva, and, if the jury concluded that the latter and

2. SAME: posses-
sion of co-
conspirator:
evidence.

defendant had entered into a conspiracy to steal the goods, which the evidence warranted, then the finding of the goods in the possession of a co-conspirator might properly be proven. *State v. Wohlman*, 34 Mo. 482, (86 Am. Dec. 117) ; *State v. Phelps*, 91 Mo. 478, 482, (4 S. W. 119) ; *Branson v. Com.*, 92 Ky. 330, (17 S. W. 1019) ; *Brookin v. State*, 26 Tex. App. 121, (9 S. W. 735).

Of course, the possession, to warrant the presumption of guilt, must have been exclusive. This does not mean that it must be separate, for such exclusive possession may be the

3. SAME: ex-
clusive pos-
session of
stolen goods.

joint possession of two or more, as where they are acting in concert. *State v. Raymond*, 46 Conn. 345; *People v. Nicolosi*, 4 Cal. Unrep. Cas. 341, (34 Pac. 824) ; *Porter v. People*, 31 Colo. 508, (74 Pac. 879) ; 25 Cyc. 140.

If then Ringva and defendant had entered into a conspiracy to steal from the railway cars, and defendant was in possession of part and Ringva part, or defendant was in pos-

4. SAME: posses-
sion of
stolen goods.

session and afterward transferred the goods to the premises of Ringva, such possession recently after the larceny proven to have been committed, if unexplained, was such as to justify the jury in inferring defendant's guilt of the offense. The evidence that the car No. 30394 had been sealed, was broken, and shoes found at Ringva's house, taken therefrom, was undisputed, and therefore the proof was such that the jury might have found not only that defendant alone or with others was guilty of the larceny from the car, but that in committing that crime he necessarily perpetrated the crime of burglary. *State v. Brower*, 127 Iowa, 687; *State v. Donavan*, 125 Iowa, 239; *State v. Raphael*, 123 Iowa, 452; *State v. Brady*, 121 Iowa, 561.

II. After trial had begun, and the opening statement was made, counsel for the defendant moved that "this mass of

goods be removed from the presence of the jury," on the
ground that it was not connected "with the
overt act here charged or as having been
found on the premises of Joe Stutches." The
motion was overruled. What this "mass of goods" may have
been, the record does not disclose. Assuming it to have been
articles heretofore mentioned, allowing these in the room in
the sight of the jury cannot be said to have worked prejudice
in their minds. Certainly there could have been nothing ex-
citing about them, and any possible prejudice was averted
by an admonition of the court that the jury should not con-
sider anything about the room in which the trial was proceed-
ing not introduced in evidence. There was no error.

5. SAME: presence in court of stolen goods.

III. A sack of shoes identified as part of those shipped by
McCune-Kelly Shoe Company was received in evidence over
objection. The ruling was right, for Mrs. Ringva testified
these were brought to her house in the morn-
ing of January 28th by the defendant, and
other evidence established larceny thereof
from the car. This tendered to show recent possession of the
stolen property. But it is said that such possession must have
been exclusive; if so, this would not warrant the exclusion of
the evidence that he and another hauled the goods as described
by Mrs. Ringva.

6. SAME: evidence: stolen property.

The order of the introduction of evidence
is discretionary, and though the goods were
not identified as having been stolen when received in evidence,
this was done afterwards, and the ruling was not erroneous.

7. SAME: order of proof.

IV. A detective testified to going to the house of Mrs.
Ringva in company with two others and recited the occurrences
there. Counsel for defendant then moved that the evidence be
stricken and the motion was overruled. There
was no error. The party cannot sit by and
allow testimony to be given without objection
and afterwards, if not to his liking, have it excluded on motion.
The objection must be interposed when the evidence is ten-
dered.

8. SAME: evidence: timely objection.

V.   Articles found at Ringva's house were introduced in evidence over objection.   The ruling was correct for that Mrs. Ringva testified that these were brought with the stolen shoes by defendant, and other evidence tended to show that like articles had been taken from railway cars near by, at about the same time car No. 30394 was broken into.

VI.   The shoes were the only articles identified as having been taken from any car, and these were shown to have been stolen from a Chicago Great Western Railway Company's car No. 30394.   The defendant requested the court, in substance, to require a finding that this car was broken and entered in order to convict; but this was refused, and no like instruction given. The evidence tended to show that four other cars, all apparently in the possession of the same company, had been broken into and goods taken therefrom, and the instructions left it open to the jury to convict the accused of burglary from any of the cars.   As the evidence was insufficient to authorize this, the jury should have been instructed that he could only be convicted, if at all, of having burglarized the particular car from which the three cases of shoes were taken.

9. SAME: evidence: instruction.

VII.   The evidence was enough to authorize the submission of whether defendant and Ringva were acting together.   Mrs. Ringva testified that Stutches had been with him Saturday, Sunday, and Monday prior to the Monday night the three cases of shoes were extracted from car No. 30394 and had brought the stolen goods there in the morning.   This with Stutches' testimony of seeing Ringva at his house about 5 o'clock in the morning after the larceny, and the finding of the shoes where they were, was enough to carry the issue as to whether the two had conspired and together had committed the offense.

10. SAME: burglary: joint acts: evidence.

VIII.   There was no evidence tending to connect Poulik with the offense charged.   True, Stutches testified that he,

with Kaiakaitis and Dunskey, brought the half barrel of sugar
to his house about the 1st of January. Sup-

11. SAME: evi-
dence: un-
identified
property.

pose they did. It was not shown that any
sugar had been taken from the cars. Nothing
in the record tends to support the assertion of the state's
attorney that it was taken from car No. 30394, and the de-
fendant's motion at the close of the state's evidence to strike
all testimony concerning the sugar should have been sustained.

IX. Hademark testified that he had charge of the
records of the Chicago Great Western Railway Company in
billing and shipping goods from Des Moines, that he had a

12. SAME: docu-
mentary evi-
dence: intro-
duction.

copy of the billing of goods in car No. 30394,
also of goods loaded in a Pennsylvania car;
also of a Chicago, Rock Island & Pacific car
originating at Faribault, Minn., disclosing one case of shoes
short, also another Chicago Great Western Railway car
with sack of coffee short, and another car of same road. He
had no personal knowledge of the matters, save as disclosed
by his record, which had not been made by him. Who made
it, or whether correct, does not appear. The objection to
the competency of such record was timely should have been
sustained.

It is said that the indictment is defective

13. SAME: indict-
ment: objec-
tion to sub-
stance and
form.

in not definitely describing the car broken and
entered. See *People v. Webber*, 138 Cal. 145,
(70 Pac. 1089). The objection comes too late.
Chapter 227, Acts of 33d General Assembly.

The criticism of the instruction on recent possession
doubtless will be obviated on another trial.

Because of the errors pointed out, the judgment is *Re-
versed* and the cause *Remanded*.

WEAVER, C. J., and EVANS and PRESTON, JJ., concur.