STATE OF IOWA, Appellee, v. ALBERT KENNEDY, Appellant.

**CRIMINAL LAW:**  Trial and Continuance—Avoiding Continuance.
1   The State may avoid a continuance in a criminal cause by admitting that an absent witness would, if present, testify as stated in the application for a continuance.

**BURGLARY:**  Evidence—Sufficiency.  Testimony held to present a jury
2   question on the issue of breaking and entering with criminal intent.

**BURGLARY:**   Evidence—Recent Possession of Stolen Property—Ef-
3   fect.  It is not error for the court to speak of the "presumption" indulged in by the law where property obtained by a burglary is soon thereafter found in the possesion of the accused, and to tell the jury that a conviction may be based on such presumption, "together with all the evidence in the case."

**BURGLARY:**  Evidence—In re Recent Possession.  Testimony held to
4   present a jury question on the issue whether an accused was in recent possession of property obtained by means of a burglary.

**CRIMINAL LAW:**  Trial and Continuance—Insufficient Application.  If
5   an accused wishes a continuance, he must make formal application therefor. .

*Appeal from Woodbury District Court.*—C. C. HAMILTON, Judge.

FEBRUARY 13, 1923.

REHEARING DENIED MAY 18, 1923.

DEFENDANT was convicted of the crime of breaking and entering, and sentenced, from which sentence this appeal is prosecuted.—*Affirmed.*

*George G. Yeaman* and *Kass Bros.,* for appellant.

*Ben J. Gibson,* Attorney-general, for appellee.

ARTHUR, J.—I.   Defendant was jointly indicted with William Hildebrand and Jacob Lane.   The indictment charged that defendant and Hildebrand and Lane, on or about the 7th day of November, 1921, in Woodbury County, Iowa, did unlawfully and feloniously break and enter the store building at 310 Pierce Street, in Sioux City, with the unlawful and felonious purpose and intent to commit larceny.   Defendant, Kennedy, alone was on trial in this case.

On the 7th day of November, 1921, between the hours of 6 and 10 o'clock in the afternoon, the store building located at No. 310 Pierce Street, in Sioux City, owned by August Williges, in which he manufactured and kept for sale furs and merchandise, was broken into, and about $17,000 or $18,000 worth of furs were taken therefrom.   It was the claim of the State that defendant, Albert Kennedy, in company with Jacob Lane and William Hildebrand, went to the store, and that defendant entered the store and proceeded to the back part thereof, and engaged Henry Williges, the son of the owner of the fur store, and employed therein, in conversation concerning the purchase of a box for the assigned purpose of packing a coat for shipment; that, while Kennedy engaged Henry Williges in conversation, Hildebrand stood in the doorway, holding the door open, and back of him was Lane, standing in the vestibule just outside the door; that Kennedy and Hildebrand were noticed particularly by Henry Williges and Alice Zehren, another clerk in the store; that, on the trial, Henry Williges and Alice Zehren were able to and did positively identify Kennedy as the man who had been at the Williges store on November 7, 1921; that,

about 11 P. M. on the night of November 7th, it was discovered that the store had been entered, and furs taken therefrom; that an examination of the premises disclosed that the lock on the front door, at which Hildebrand had been standing in the afternoon, while Kennedy engaged the clerk, Henry Williges, in conversation, had been tampered with; that the screw that controls one of the lock bolts had been removed, and the lock rendered useless for locking purposes, or rather, so changed that the door could be easily unlocked from the outside.

The evidence showed that, in the afternoon of November 8, 1921, at about 2 o'clock, a man who gave the name of Harold Hemmingway, but who was afterwards identified as Hildebrand, approached Mrs. Clara P. Green, who lived at No. 27 St. Paul Apartments, Idelhart Avenue, St. Paul, Minnesota, and rented from her a front apartment, representing that his wife would occupy the apartment with him, and that they were respectable people, and that they were living in Minneapolis at the time, and that he traveled for a silk company; that, between 4 and 5 o'clock in the afternoon of the same day, Hildebrand, having gone out for the alleged purpose of consulting his wife about moving into the apartment, returned, and represented to Mrs. Green that his wife was sick, but that they would come that evening and occupy the apartment; that, about this time, a large closed car drew up across the street from the apartment, the occupants of the car blowing the horn in an attempt to attract the attention of Hildebrand; that, about 20 minutes past 9 that same evening, the same car drew up to the apartment, three men alighted therefrom, carrying sacks, and came down the private driveway to the back entrance of the building, and upstairs to Apartment 9, which Hildebrand had rented that afternoon; that, shortly thereafter, a short woman got out of the car, and went up the front way, and two or three minutes later, another short woman got out and went up the front way, and then Hildebrand got out of the same car, and went up the front way, and the car drove away; that Hildebrand was afterwards, a day or two before the trial, identified by Mrs. Clara P. Green, who rented the apartment to Hildebrand, as the man who rented the apartment; that, about 20 minutes after these people had entered the apartments, Mrs. Clara P. Green went up

the front stairs and rapped several times on the door of the apartment, and received no answer; that thereupon, she went back to her own apartment on the first floor and got the pass key and went up and unlocked the first door, which opens into the dining room of the apartment which she had rented to Hildebrand, and there was no light in the dining room or in the parlor of the apartment; that, down the hall, about 10 feet from the entrance of the apartment, there is a bedroom, and under the bedroom door Mrs. Green saw a light, and by slamming the dining-room door, drew the attention of the occupants of the bedroom, and a man came out into the dining room and wanted to know what she wanted, and what she was there for; that, in the meantime, Mrs. Green had switched on the lights in the dining room, and she replied that she wanted to see the man who had rented the apartment; that Hildebrand was called, and came out, and sat down on a chair at the dining-room table; that Mrs. Green informed him that she thought he was a lucky man not to be taking a ride in the patrol, and Hildebrand replied, ''I know it, Mrs. Green;'' that Mrs. Green ordered Hildebrand and those with him from the apartment, and while they were discussing the matter, another man came out into the dining room, who, Mrs. Green states, was, in her best judgment and opinion, the defendant, Kennedy; that, as Kennedy came from the bedroom, Mrs. Green noticed furs piled on the bedroom floor; that these parties all, shortly afterwards, left the apartment, on the order of Mrs. Green; that, when Mrs. Green went into the bedroom and opened the closet door therein, to see if anything of a suspicious character had been left, the corner of the rug was raised up by the door, as she opened it, and she discovered three tags that had been used by some merchant as cost and selling price tags for merchandise, and a silk trade-mark that had the name of August Williges, Sioux City, Iowa, on it, and three razor blades; that afterwards, these tags and the trade-mark were identified by Henry Williges as having come from their store, the writing thereon being in his handwriting, and the cost and selling price being their secret cost prices.

The defense interposed by Kennedy was an alibi. The defendant on his own behalf testified that he was not in Sioux

City on the 7th day of November, 1921, the day of the alleged robbery, but that he was, on that day and for several days previous to and after that date, in the city of St. Paul. Defendant produced six or more witnesses, whose evidence was taken by depositions, who testified that defendant, Albert Kennedy, was in St. Paul on the day of the burglary, November 7, 1921.

Hildebrand had been tried before the trial of Kennedy, and the trial of Lane had been set to succeed the trial of Kennedy. After the commencement of the trial of Kennedy, the said codefendants, Hildebrand and Lane, were confined in the county jail, located in the courthouse in which this case was being tried. During the trial of this case, which commenced on February 22d, and after the jury had been impaneled and sworn, and opening statement to the jury had been made, and during the night of February 23d, or early in the morning of February 24th, Hildebrand and Lane and four other prisoners escaped from the county jail in which they were confined. The next morning, there was great excitement over the jail delivery, and extra newspapers were printed and circulated in and about the courthouse, containing write-ups and articles about said jail delivery. On the morning of said jail delivery, George G. Yeaman, attorney for the defendant, stated to the trial judge that he did not believe the defendant could get a fair trial under existing conditions, but the trial proceeded, and the cause was submitted to the jury at about 5 o'clock in the afternoon, and the jury returned a verdict the same evening, at 7 o'clock.

Counsel for appellant assign eleven claimed errors which are relied upon for reversal in this case, which assignments we will now consider.

II. Appellant complains that his motion for continuance, presented on the day the case was reached for trial, was overruled. The State elected to proceed with the trial, and admitted

1. CRIMINAL LAW: trial and continuance: avoiding continuance.

that the absent witnesses, if present in court, would testify as stated in the motion for continuance. Overruling the motion was not error. Code Section 3665.

III. Assignments 2 and 3 challenge the sufficiency of the evidence to warrant submission of the case to the jury, and

assert that overruling defendant's motion to direct a verdict in his favor at the conclusion of the State's testimony, and overruling such motion, when it was renewed at the conclusion of all the testimony, constituted error. It is sufficient to say that we have examined the evidence carefully, and have set out the salient features in the statement of the case, and find that the evidence was sufficient to take the case to the jury.

2. BURGLARY: evidence: sufficiency.

IV. In the third assignment of error it is urged that the court erred in admitting in evidence, over objections of defendant, certain hotel register pages. Whether these hotel register pages were properly admitted in evidence depended upon their proper identification by the witness Alfred Pizey. The exhibits were properly identified, and there was no error in admitting them.

V. The fifth assignment challenges the correctness of Instruction 7, on the presumption of recent possession of stolen property unexplained. In this instruction the court told the jury, in substance, that, if the State had proved beyond a reasonable doubt that, on the 7th of November, 1921, there was a breaking and entering of the building described in the indictment, and that the furs in question were stolen therefrom, and that the defendant was in recent possession of the stolen property, "then you may convict the defendant of the crime of breaking and entering, as charged, upon this presumption alone, if you find such presumption is not rebutted, or the possession of the defendant, if any, not explained."

3. BURGLARY: evidence: recent possession of stolen property: effect.

It is urged by counsel for appellant that this instruction makes the unexplained possession of the goods recently stolen sufficient to convict, without other evidence to justify the conviction of the defendant of the crime charged. We think the instruction is not subject to such criticism. Immediately after the above quotation, the same instruction proceeds:

"If such presumption, together with all the other evidence in the case, facts and circumstances shown upon the trial, satisfies you beyond a reasonable doubt of the defendant's guilt, then you should convict him. But if you are not so satisfied, then you should acquit him."

In the instant case, the evidence shows the breaking and entering and larceny to be at the same time, and a concurrent transaction. Also, in other instructions, the court properly told the jury that the presumption of innocence of defendant existed at all stages of the trial, and that upon every proposition the defendant must be proved guilty beyond a reasonable doubt. The court gave a correct instruction on alibi, which was the defense interposed by defendant, and properly told the jury that "if, upon the whole case, including the testimony pertaining to the alibi, the jury has a reasonable doubt as to the guilt of the defendant, he should be acquitted."

Defendant also asserts that the testimony produced by the State tending to prove defendant's possession of the stolen goods was insufficient on which to base the instruction. We have reviewed the evidence carefully, and think it was sufficient to warrant giving the instructions. We think there is no prejudicial error in the instruction, when read as a whole.

4. BURGLARY: evidence: *in re* recent possession.

VI.   Appellant complains of Instruction 8, wherein the court instructed that the possession need not be the sole possession of the defendant, but that, if the stolen property was in the joint possession of the defendant and others, for the use and benefit of the defendant, or for the use and benefit of the defendant and others jointly, then such presumption would arise.

Appellant also complains of Instruction No. 13, wherein the court instructed the jury as to the weight to be given to defendant's testimony.

Appellant complains of Instruction No. 12, wherein the court instructed as to the defense of alibi.

No instructions were requested on the subjects of these three instructions. They were instructions usually given on these questions, and we find in them no error.

VII.   Appellant assigns error in overruling his motion for a new trial, for the reason that he has not received a fair and impartial trial, and that the verdict is the result of passion and prejudice of the jury, and on the ground of excitement in the court room during the trial, arising on account of the jail delivery and escape of Hildebrand and Lane, who were indicted

jointly with defendant. Another complaint that appellant was not afforded a fair trial is that contained in affidavits that witness for the State Clara P. Green, of St. Paul, was observed conversing with one of the jurors.

We find no merit in these assignments. No motion for continuance of the case was made, upon learning of the jail delivery. The record is silent as to what was said, if anything, between Mrs. Green and the juror. The presiding court, in the written ruling on motion for a new trial, said, in substance, concerning these matters, that he cautioned the jury not to talk with any person or permit any person to speak to them about the case; that he cautioned the jury not to read any account in the newspapers during the time they were sitting as jurors in the case. In the absence of any proof to the contrary, we may rely on the guarded discretion of the court in affording the defendant a fair trial.

5. CRIMINAL LAW: trial and continuance: insufficient application.

Upon a careful examination of the whole record, we believe that defendant had a fair trial; that the evidence was sufficient to support the verdict; and that there is no prejudicial error in the record. The case is—*Affirmed.*

Pʀᴇsᴛᴏɴ, C. J., Eᴠᴀɴs and Fᴀᴠɪʟʟᴇ, JJ., concur.

---

Sᴛᴀᴛᴇ ᴏғ Iᴏᴡᴀ, Appellee, v. Bᴇʀᴛ Kᴇʀsʙᴇʀɢᴇʀ, Appellant.

INTOXICATING LIQUORS: Bootlegging—Evidence. Evidence reviewed, and held sufficient to present a jury question on the issue whether defendant was guilty of the crime of bootlegging.

CRIMINAL LAW: Testimony of Accomplice—Instructions. Instructions on the subject of corroboration of an accomplice are not rendered improper because of the omission of the statutory language to the effect that ''corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof.''

INTOXICATING LIQUORS: Possession—Evidence. Evidence held to show possession of intoxicating liquors on the part of the accused.

