STATE OF IOWA, Appellee, v. HERBERT BIGE, Appellant.

CRIMINAL LAW: Trial—Right to Speedy Trial. Complaint that defendant was not given a speedy trial under an indictment for felony becomes immaterial when the indictment was dismissed on motion of the State, and a new indictment was returned within the statutory period of limitation.

GRAND JURY: Error in Discharging Jury. An accused has no legal right to have the charge against him investigated by any particular grand jury.

CRIMINAL LAW: Instructions—Flight. Instructions as to the effect of "flight" may be proper even though there is no direct evidence that the accused fled *to avoid arrest.*

BURGLARY: Evidence—"Recent Possession." There is no hard and fast rule as to what constitutes "recent possession" of property obtained by a burglary.

BURGLARY: Indictment—Ownership in Firm Name. It is not a fatal objection that an indictment for burglary lays the ownership of the premises in a partnership by simply giving the firm name.

*Appeal from Wright District Court.*—G. D. THOMPSON, Judge.

APRIL 3, 1923.

REHEARING DENIED JUNE 22, 1923.

THE defendant was convicted of the crime of entering a store building at Goldfield, Iowa. Judgment was entered, imposing a fine of $100 and that the defendant be confined in the county jail for 10 months. Defendant appeals.—*Affirmed.*

*F. J. Lund* and *J. W. Henneberry*, for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, and *J. A. Rogers,* County Attorney, for appellee.

PRESTON, C. J.—1. The indictment upon which defendant was tried was returned April 18, 1922. It was against this defendant alone. It charges, in substance, that the defendant, about October 21, 1920, did, in the nighttime of said day, break and enter a certain store building in Goldfield, of said county, the said store building being then and there the property of Charleson & Holt, in which building goods, wares, and merchandise were kept for sale, use, and deposit, etc. At the January, 1921, term, and on February 7, 1921, the grand jury returned an indictment against this defendant and two others, charging them with the same crime, growing out of the same transaction. To that indictment defendant entered a plea of not guilty. At the April, 1921, term of court, the case was continued, on application of the State, and, as the record shows, with the consent of the defendant. At the October, 1921, term, the court was of opinion that the indictment against defendant could not then be tried, and at the request of the county attorney, and with the consent of the attorney for the defendant, stated that the case would be continued, for want of time to try the case at that term. The court stated at that time that he would make such a memorandum on his court calendar; but, through oversight, this entry was not made. As we understand the record, this entry was subsequently made, *nunc pro tunc.* On December 7, 1921, the county attorney filed a motion for continuance, supported by affidavit, asking that the cause be continued until the next term of court, on account of the absence of a material witness for the State, who had been a witness before the grand jury. The defendant filed objections to the motion for continuance, but the motion was sustained. Thereafter, and on February 13, 1922, the defendant filed a motion to dismiss the indictment, on the ground that more than two terms had elapsed after the indictment, and that the case had not been brought to trial, and that he had been denied a speedy trial.

At the same time, the defendant also filed objections, exceptions, and challenges to the jury list, jury panel, and jurors, setting out numerous grounds, the substance of which is that the jury list was not prepared, certified, and selected as required by law. The next day, the State, conceding that the grand jury had not been properly drawn, moved that the first indictment be dismissed or set aside, and that the court take such other action as provided by law and as to the court might seem proper. The motion was sustained, and the court ordered the case resubmitted to another grand jury at the April, 1922, term of court, and ordered that the defendant be required to give bail, and ordered that the board of supervisors select new lists of jurors, both petit and grand and talesmen, to serve for the year 1922, as provided by Sections 337-a, 337-b, 337-c, and 337-d, Code Supplement, 1913. This was done, and we think legally. At the April, 1922, term, and prior to the impaneling of the grand jury for said term, defendant appeared, and filed written exceptions and objections to the panel of the grand jury and to the individual members thereof, on numerous grounds, among them that there was no authority of law for the order entered by the court at the February term, ordering a new grand jury; that defendant was indicted by a former grand jury, to which no objection was made; and that an indictment by the second grand jury would be invalid and void. Some of the other grounds are mere conclusions that the action was invalid, without giving any reason. Others of the objections raised questions of fact, upon which evidence was taken, and the objections by defendant to the new panel and the members thereof were overruled.

It seems to us that, under the circumstances, we ought not to take up much time with this matter. A dismissal of the first indictment, had it been granted, as requested by the defendant, would not be a bar to a second indictment, as claimed by defendant, if the second was returned within the statutory period of limitations. While the action of the trial court in resubmitting the case to the grand jury may not have been quite equivalent to a dismissal, in that defendant was held to bail, still that question was not tested out in any way, so far as the record shows, and we do not understand appellant to complain of that feature. The court did

1. CRIMINAL LAW: trial: right to speedy trial.

sustain defendant's contention that the grand jury had been improperly drawn, and set it aside. This was in accordance with the motion of the defendant. The defendant had not been placed in jeopardy by the mere returning of the indictment, and we think that the defendant is not now in a position to complain because the court complied with his motion and held that the first grand jury had not been properly drawn. The statute provides that the indictment may be set aside when the grand jury were not selected, drawn, etc., as prescribed by law. Code Section 5319. Code Section 5324 is to the effect that, where the motion is sustained and the indictment set aside, the court must order the defendant discharged, unless the court direct that the case be resubmitted to the same or another grand jury. An order setting aside the indictment is no bar to a future prosecution for the same offense. Code Section 5326.

The appellant does not complain so much of this matter as he does of the fact that he was not given a speedy trial. The statute as to bringing the case on for trial provides that the defendant must be brought to trial at the next regular term of court after the indictment, unless good cause to the contrary be shown. Code Section 5536. Whether the continuances to which defendant or his counsel agreed, or the sustaining of the State's motion for a continuance, were for good cause shown, we need not determine. The State's motion to dismiss or set aside the indictment and resubmit was sustained. The first indictment was set aside. Appellant's proposition that there were two indictments pending at the same time is not well taken. The offense charged being a felony, the action of the court is not, as said, a bar to another indictment. Code Section 5539; *State v. Scott,* 99 Iowa 36.

2. On April 20, 1922, defendant filed a motion to set aside the second indictment, one ground of which motion was that there was another indictment pending. Other grounds of the motion state conclusions that the grand jury was illegally drawn, and that the order of the court in setting aside the first indictment and ordering a new grand jury was contrary to law, without stating the reasons. On the same day, defendant filed a motion to set aside and dismiss the indictment, on substantially the same

2. GRAND JURY: error in discharging jury.

grounds. The motions were overruled, and the defendant entered a plea of not guilty.

We think it unnecessary to discuss the foregoing matters further, except to say that we have held that, if it appears that no valid objection exists to the grand jury which returned the indictment, except that the first jury was erroneously discharged, no substantial right of the defendant's was violated; for he had no legal right to have his case investigated by any particular jury. *State v. Carter,* 144 Iowa 371; *State v. Heft,* 148 Iowa 617; *State v. Wilson,* 166 Iowa 309, 317.

3. Thirty-three errors and points are relied upon. Those most elaborately argued and apparently most relied upon are those in regard to the claim that defendant was not given a speedy trial, and the proceedings in regard to the indictments, which have been discussed. It would be impracticable to discuss separately all the assignments. We shall notice those which seem to be at all controlling. The record has been examined, and all questions raised have been considered.

The sufficiency of the evidence generally and the corroboration of an alleged accomplice are challenged. The evidence is that of the State alone. The defendant did not testify, and no evidence was introduced in his behalf. Briefly, it is shown without dispute that the store of Charleson & Holt in the town of Goldfield, Iowa, was burglarized on the night of October 21, 1920, and merchandise consisting of shirts, overcoats, suits, etc., to the value of approximately $3,000, was taken. A part of the merchandise was later found in the possession of the defendant and his accomplices, and was identified by the owners by their cost mark. The defendant was acquainted with one Naomi Purvis, a 16-year-old girl, who was living and working in Hamilton County. On the evening of October 21, 1920, she was at the home of her sister, Mrs. Campbell, and went riding in an automobile with defendant and another sister and Fortune and Jones. They went through Eagle Grove, and continued toward Goldfield. There was talk on this trip about going to Goldfield and robbing a store. They rode into Goldfield some time about midnight that night. The car was stopped on a side street. The men all got out, and left the women remaining in the car. The men later returned, each bringing something and putting it

in the car. One of the men said that they had gone into the store. Returning, they went to Webster City, to the home of Mrs. Campbell, where the two women and this defendant got out. At that time and place, there was some conversation to the effect that, if anything got out about this transaction, they would all get in bad, or be arrested. The other two men then drove away from the Campbell place, and this defendant took Naomi to her brother's home, and her brother took her to the place where she was working. After the merchandise was found in the home of Fortune, and a warrant was issued for the arrest of defendant, he and Naomi and her sister went, in the defendant's automobile, to the city of Des Moines, where they stopped four or five days. From Des Moines they went to Moberly, Missouri, where the women met this defendant, and they traveled together in the defendant's car, south. Defendant said he was going south for his health. Naomi and her sister went to Moberly by train. After leaving Moberly, these parties traveled together in defendant's car, south, until something happened to the car, and they stopped at Stoughton, Missouri, to get repairs, where they were all three arrested, and were brought back to Iowa. On December 2, 1920, Charleson, with some of the officials, went to the home of Fortune, where they found part of the goods and merchandise that had been taken from the store the night of the robbery. A grip, Exhibit A, was taken by the sheriff when he arrested defendant and the two women in Stoughton. The suitcase at that time contained shirts which were identified by Charleson as having been stolen from his store on the night of October 21, 1920. There was also evidence in regard to another suitcase, Exhibit C, and other articles. A part of this testimony was stricken out by the court, on motion by the defendant. It is not quite clear from the record what part was so stricken. One of the suitcases was sent by express, and as near as we can arrive at it, the evidence as to it was excluded because the evidence in reference to it was not connected up. We think that the evidence abundantly sustains the verdict, and that the corroborating evidence was sufficient to take the case to the jury. There is shown the possession of some of the property, flight, and other circumstances.

4. It is thought by appellant that the court was not war-

ranted in giving an instruction on flight, because there was no foundation in the evidence, for that it was not shown that de-
fendant knew he was accused or suspected, or
3. CRIMINAL LAW: instructions: flight. that he fled to avoid arrest. We have held that evidence is properly admissible, and that it is proper to instruct on this question, even though the accused had not been charged with the commission of the offense. It was for the jury to say, under all the circumstances, whether he departed because of his consciousness of guilt. *State v. Robinson,* 170 Iowa 267, 283; *State v. O'Meara,* 190 Iowa 613, 627; *State v. Christ,* 189 Iowa 474, 481.

5. Nearly all the instructions are complained of. The most serious complaint seems to be in relation to the instruction on recent possession of some of the stolen property, unex-
plained, and the presumption arising therefrom.
4. BURGLARY: evidence: "recent possession." The evidence shows that the breaking and entering and the larceny were committed at the same time. The instruction in the instant case is not as broad as the one given and approved in the recent case of *State v. Kennedy,* 195 Iowa 1059, and in *State v. Perry,* 165 Iowa 215, and *State v. Harris,* 153 Iowa 592. There was sufficient basis in the testimony to warrant the giving of this instruction. We have held that, where it is shown that two or more defendants, acting together as accomplices, conspiring together, entered a store building, and had goods stolen therefrom in their joint possession, it is competent to prove that subsequently part of the goods were found in the possession of one of the accomplices. *State v. Kennedy,* supra; *State v. Stutches,* 163 Iowa 4. There is no hard and fast rule, and no definite time which can be said to be recent possession. Whether the stolen property was recently found in possession of a person depends somewhat upon the circumstances. In the instant case, a part of the goods appears to have been secreted in the home of one of the parties acting in concert with defendant, and a part was found in a distant state. We think there was no error at this point.

6. A number of the assignments of error relate to questions propounded to Naomi Purvis, one of the alleged accomplices of defendant, that the questions were leading. We shall not extend the opinion by setting out the different questions. Some of them

are clearly not leading, and we think that none of them are prejudicial. The witness seems to have been an adverse witness. The motion for continuance by the State was based upon her absence. An attachment was issued for her before the continuance, because of her disobedience to a subpœna. In such matters much is left to the discretion of the trial court. *State v. Burns,* 119 Iowa 663.

7. It is further assigned as error that an indictment for burglary laying the ownership of the premises in a partnership by simply giving the firm name is bad, and that the motion in

5. BURGLARY: in-
dictment: own-
ership in firm
name.

arrest should have been sustained, and that the name of the owner of the building must be stated, if known. Mr. Charleson testifies:

"I had a partner by the name of E. A. Holt, and did business under the name of Charleson & Holt. The store was on the east side of the street. Our building is a 2-story frame building."

It is contended by the State that the objection to the indictment comes too late. However this may be, the indictment and the evidence show that the ownership was alleged to have been in the firm. We have held that, in an indictment for burglary, ownership means any possession which is rightful as against the burglar. *State v. Burns,* 155 Iowa 488; *State v. Anderson,* 155 Iowa 271. Even if the firm was only a tenant, it is sufficient. *State v. McCray,* 189 Iowa 1239. In any event, we think that, under Section 5286 of the Code, the alleged variance, if any, is not material.

It may be that we have considered some matters that really do not deserve attention; and, as said, there are other matters which have not been noticed specifically. After considering the whole case, we are of opinion that no prejudicial error appears. The judgment is—*Affirmed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.