## STATE v. CRAWFORD.

No. 3714.   Decided November 7, 1921.   (201 Pac. 1030.)

1. CRIMINAL LAW—IDENTITY OF PROPERTY IN POSSESSION OF AC-
CUSED MUST BE ESTABLISHED BEYOND REASONABLE DOUBT.   In a
prosecution for burglary, where the prosecution relies prin-
cipally on possession of recently stolen property, the identity of
such property must be established beyond a reasonable doubt,
but not necessarily beyond the possibility of a doubt.

2. BURGLARY—IDENTITY OF PROPERTY IN DEFENDANT'S POSSESSION
WITH THAT STOLEN HELD FOR JURY.   In a prosecution for burg-
lary, where prosecuting witness identified jewelry found in de-
fendant's room as that taken from her house, but on cross-
examination was not positive, the identity of such property was
a question for the jury.

3. BURGLARY—TOOLS FOUND IN DEFENDANT'S ROOM ADMISSIBLE,
THOUGH NOT SHOWN TO BE ADAPTED TO COMMISSION OF OFFENSE.
In a prosecution for burglary, where certain marks and abra-
sions found on the door of the burglarized house, for aught
that appeared in the evidence, might have been made with tools
found in defendant's room, such tools were admissible in evi-
dence, though it was not shown they were adapted to the com-
mission of the burglary.

4. BURGLARY—EVIDENCE HELD INSUFFICIENT TO ESTABLISH DEFEND-
ANT'S POSSESSION OF STOLEN ARTICLES.   In a prosecution for
burglary, evidence *held* insufficient to show that defendant had
such possession of the stolen articles found in a room occupied
by him and another as to connect him with the crime.

5. CRIMINAL LAW—WITNESSES—DEFENDANT'S ADMISSION OF PRIOR
TERM OF IMPRISONMENT NO EVIDENCE OF GUILT, GOING TO CREDI-
BILITY ONLY.   In a prosecution for burglary, defendant's admis-
sion that he had served a term of imprisonment in another state
went to his credibility only, and did not tend to show that he
had committed the offense charged.

6. BURGLARY—POSSESSION OF STOLEN ARTICLES TO WARRANT INFER-
ENCE OF GUILT, MUST BE RECENT AND EXCLUSIVE, BUT "EXCLUSIVE
POSSESSION" NEED NOT BE SEPARATE.   To convict of burglary on
the ground of defendant's possession of stolen articles, such
possession must not be too remote in time, and must be per-
sonal and exclusive, or, if joint with another, there must be
other evidence to connect defendant with the offense; but "ex-
clusive possession" does not necessarily mean that the posses-
sion must be separate, for it may be the joint possession of
two or more, as where they are acting in concert.

7. CRIMINAL LAW—DEFENDANT'S ATTEMPT TO ESCAPE WHILE CHARGED WITH ROBBERY DOES NOT INDICATE GUILT OF BURGLARY. Where one charged with robbery, the penalty for which may be life imprisonment, attempted to escape, this was not a circumstance indicating guilt of offense of burglary, for which he was afterward tried.

8. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE MUST EXCLUDE EVERY REASONABLE HYPOTHESIS EXCEPT THAT OF DEFENDANT'S GUILT. Defendant must be accorded the benefit of every reasonable doubt, and, in cases dependent solely on circumstantial evidence, the circumstances must be such as to exclude every reasonable hypothesis except that of guilt.

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie,* Judge.

Cyril Crawford was convicted of burglary in the third degree, and he appeals.

REVERSED AND REMANDED.

*Wm. Reger,* of Salt Lake City, for appellant.

*H. H. Cluff,* Atty. Gen., and *W. Hal Farr,* Asst. Atty. Gen., for the State.

THURMAN, J.

Defendant was convicted by the verdict of a jury in the district court of Salt Lake County of the crime of burglary in the third degree, and sentenced to a term of imprisonment in the state prison. From the judgment so entered, defendant appeals and assigns as error the admission of certain evidence over his objection, insufficiency of the evidence to sustain the verdict, and error in refusing a directed verdict.

The evidence at the trial tends to show that on May 10, 1921, the residence of Mrs. Frank Angell, in Salt Lake City, was broken into in the daytime, and a cameo brooch, an opal ring, and a small amount of money was taken therefrom. Mrs. Angell left home about 2 o'clock in the afternoon of the date mentioned and returned about 4:30. She left the doors locked and saw the articles in question just before leaving her residence. On her return she entered at the

front door, and passed through to the rear, where she found the transom over the rear door down and the fastener broken. She also found the door unlocked, but the key was in the door on the inside as she had left it on leaving the house. There were marks on the door outside, above the lock. The paint and some of the wood was off. It looked as if a screw-driver or similar instrument had been used. The above facts were reported to the police. On the morning of May 17, seven days after the burglary occurred the police, while investigating an alleged robbery of the night before, knocked at the door of a room occupied by defendant and one Austin in the Hotel Hampton, Salt Lake City, and were admitted. Both occupants were in their nightclothes, not having dressed for the day. The officers proceeded to search the room. Under a dresser in the southeast corner of the room they found two or three revolvers and some articles of jewelry wrapped in a paper. All of the articles were shoved back against the wall of the room. The officers also found a chisel and other tools in a drawer of the washstand. Both defendant and Austin disclaimed any knowledge or ownership of the articles so found. Mrs. Barrett, proprietress of the hotel, testified that Austin registered at the hotel on May 2, and on May 3 told her he had a friend who would room with him, and asked concerning the price. She told him to register, and he said, "All right." On May 16, the day before the officers searched the room, she was housecleaning and moved everything in the room. She discovered the articles under the dresser, examined them, and put them back. She found nothing in the washstand drawer except bits of soap. She put in clean paper and left it in that condition.

At the conclusion of their search on the 17th of May, the officers arrested both Austin and defendant, and filed a complaint against them for burglarizing the premises of Mrs. Angell. They were held to answer to the district court. Austin having escaped, defendant was tried separately, and convicted as heretofore stated.

During the course of the trial Mrs. Angell, on direct ex-

amination, identified the jewelry found in the room occupied by defendant and Austin as that taken from her premises on May 10. On cross-examination she was not positive. She said it looked like hers and 'hers was gone, but she had no marks by which to identify it. The jewelry was admitted in evidence over defendant's objection that it was not sufficiently identified as the property of Mrs. Angell. In support of his objection defendant cites the following authorities: 4 R. C. L. p. 446; *Cannon* v. *State*, 12 Ga. App. 637, 77 S. E. 920; *Love et al.* v. *State*, 58 Tex. Cr. R. 270, 124 S. W. 932; *Rayfield* v. *State*, 5 Ga. App. 816, 63 S. E. 920; *Bundick* v. *Commonwealth*, 97 Va. 783, 34 S. E. 454.

Some of these cases appear to lend considerable support to defendant's contention. There can be no question in a case of this kind, where the prosecution relies principally on possession of recently stolen property, but that the identity of the property so possessed and the property stolen should be established beyond a reasonable doubt, but to hold that the identity must be established beyond the possibility of a doubt would be to establish a rule utterly impracticable in the admistration of justice. Mrs. Angell at first testified positively that the jewelry was that which had been taken from her residence, but afterwards, on cross-examination, being reminded that there might be other jewelry of the same kind, she declined to be absolutely positive. She appeared to be a fair witness.

We are of the opinion that the matter of identity, under the facts in this case, was a question for the jury. 9 C. J. 1081, cited by the state, and cases referred to in the note.

The tools found in the washstand drawer were also admitted over defendant's objection. The particular contention made by defendant in support of this exception appears to be that it was not shown that the tools admitted were adapted to the commission of the burglary in question. The marks and abrasions found on the door, for aught that appears in the evidence, may have been made with the instruments found in the room occupied by Austin and

defendant. We feel amply justified in holding that there is no merit in this assignment.

A question far more serious, however, is presented in defendant's contention that the evidence is insufficient to sustain the verdict, and that the court erred in not directing a verdict for defendant. We have stated the substance of all the evidence produced at the trial on the part of the state. The defendant himself was sworn as a witness and protested his innocence. We are unable to find in the record a scintilla of evidence tending to connect defendant with the burglary unless it be held that the finding of the articles mentioned in the room occupied by him and another establishes a connection. There was nothing tending to show a conspiracy between him and Austin. There was nothing to show that the articles in question were in his exclusive possession or that he ever saw them until they were discovered by the officers. It must be remembered that, as far as the jewelry was concerned it was shoved back under the dresser, against the wall of the room, and was only discovered by the proprietress of the hotel when she removed the dresser in cleaning house. As concerns the tools in the washstand drawer, they were not in the drawer on the day before they were discovered by the officers. None of the articles were found in a suit case, grip, or other receptacle exclusively used by defendant, and, as far as the jewelry is concerned, there is nothing whatever to suggest a reason why the defendant should have even known it was there, much less that he had such possession as will meet the requirements of the law in cases of this kind.

Defendant admitted he had served a term of imprisonment in California. This went to his credibility only. It in no sense tended to show that he had committed the offense for which he was tried and convicted. There was no evidence whatever tending to contradict any statement he made respecting his lack of knowledge concerning the articles found in his room, nor were the circumstances such as to do more than create a bare suspicion of his guilt.

In these circumstances defendant's counsel vigorously con-

tends that the verdict is not sustained by the evidence. He relies on the following declaration of the rule in 9 C. J. at page 1081:

"Possession must not be too remote in point of time and must be *personal and exclusive*, or, if joint with another, *there must be something else in the evidence to connect defendant with the offense.*" (Italics ours.)

The cases cited in the note appear to support the text. Counsel for defendant also cites and quotes at considerable length from *State* v. *Warford*, 106 Mo. 55, 16 S. W. 886, 27 Am. St. Rep. 322 and Wharton's Criminal Law (11th Ed.) § 1027.

Of course, when the authorities speak of "exclusive possession" it does not necessarily mean that the possession must be separate, for such exclusive possession may be the joint possession of two or more, as where they are acting in concert. *State* v. *Stutches*, 163 Iowa, 4, 144 N. W. 597; *State* v. *Wright*, 22 Del. (6 Penn.) 251, 66 Atl. 364; *Cogshall* v. *State* (Tex. Cr. R.) 58 S. W. 1011; *Moncrief* v. *State*, 99 Ga. 295, 25 S. E. 735. These cases, however, are all cases in which, although possession was joint, there was other evidence tending to connect defendant with the offense.

The state makes no attempt whatever to answer this contention of defendant. It passes the question by without comment or citation of authority. It contends, however, that, inasmuch as defendant attempted to escape from the officers, this circumstance was indicative of guilt, and, in connection with other evidence, was sufficient to sustain the verdict. If defendant had not been charged with another offense, and one more serious than the one for which he was tried and convicted, there would be more force in the state's contention. But the record discloses that at the very time he made the attempt to escape he was charged with the crime of robbery, the penalty for which may be imprisonment for life. In such circumstances the authorities seem to hold that no presumption of guilt arises as to the offense for which the accused is being tried.

In Underhill on Criminal Evidence (2d Ed.) p. 220, we find the following:

"An attempt by a prisoner in jail, awaiting trial for two distinct crimes to escape is not relevant to show that he is guilty of either. It may be impossible to determine which charge he fled, or attempted to flee, to avoid. He may have fled because conscious that he was guilty of the one for which he is not on trial."

In *People* v. *McKeon*, 64 Hun. 504, 505, 19 N. Y. Supp. 486, 487, cited by the defendant, the court says:

"* * * Where the defendant is held under two distinct charges, how can the fact of an attempt to escape be said to raise any presumption of guilt of either of the crimes charged rather than the other? It is plain that the motive of escape may have been furnished wholly by his fear of prosecution for the other crime with which he was charged, and thus the act proved have been entirely consistent with consciousness of innocence of the crime in question."

While the contention of appellant does not appear to be supported by an abundance of authority, it is nevertheless controverted by none within the scope of our investigation. The contention, however, is in line with certain rules of evidence generally recognized in this country as elementary and fundamental. It is consistent with the rule that accords to a defendant charged with an offense the benefit of every reasonable doubt. It is consistent with the rule applied in cases dependent solely upon circumstantial evidence, as in the case at bar, that the circumstances must be such as to exclude every reasonable hypothesis except that of the defendant's guilt of the offense charged that every circumstance constituting a necessary link in the chain of evidence must be consistent with the defendant's guilt and inconsistent with his innocence. In the instant case, as we have already shown, under the rules of law controlling in cases of this nature, there was absolutely no evidence connecting defendant with the burglary in question unless it be the fact that defendant attempted to escape. This circumstance, therefore, became a necessary link in the chain of evidence relied on to convict. The circumstance, being entirely consistent with defendant's innocence of the burglary for which he was being tried, should have been eliminated from consideration. If the jury had taken into consideration the

fact that defendant was also charged with robbery, and was being held for that offense, the conclusion that he attempted to escape to avoid conviction for burglary would, as matter of law, have been impossible.

On the matter of attempting to escape, the court instructed the jury as follows:

"The evidence concerning an attempt to escape is received on the theory that the defendant is in fear of the result of the prosecution herein, and is attempting to escape therefrom; in other words, upon the supposition that guilt may be inferred from the fact of his attempt to escape from custody. You are instructed that the inference that may be drawn, as to its strength or weakness, depends upon the facts surrounding the defendant at the time. An attempt to escape is not of itself sufficient to establish the guilt of the defendant of the crime charged. While such acts are indicative of fear, they may spring from other causes than conscious guilt, and you should take into consideration any facts that explain or qualify or limit the drawing of the inference of guilt, or that show the acts in question to be consistent with innocence."

It is manifest the jury did not follow that instruction. The court ought to have directed a verdict of acquittal. The judgment is therefore reversed, and the cause remanded to the district court, with directions to grant the defendant a new trial.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.