# STATE v. SIMPSON.

No. 7715.  Decided October 26, 1951.  (236 P. 2d 1077.)

See 22 C. J. S., Criminal Law, sec. 812. Flight or Concealment, corroboration of accomplice by proof of. 20 Am. Jur., Evidence, sec. 1241; 87 A. L. R. 767.

*D. H. Oliver,* Salt Lake City, for appellant.

*Clinton D. Vernon,* Atty. Gen., *Bryce E. Roe,* Deputy Atty. Gen., *Francis C. Lund,* Dep. Atty. Gen., *Brigham E. Roberts,* Dist. Atty., *Wayne L. Black,* Ass't Dist. Atty. Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant appeals from a conviction of second degree burglary. His contentions for reversal are:

(1)    That there was not sufficient corroboration of the testimony of his accomplice, Paul Perkins.

(2)    That the court erroneously admitted in evidence a conversation between another accomplice, James Nixon, and one Henry Oliver, a witness for the State, and

(3)    Refusal to instruct the jury that the testimony of an accomplice should be viewed with caution.

The defendant does not prevail on any of the foregoing assertions and the conviction is affirmed.

The story as told by the co-defendant and accomplice Paul Perkins was that he, McKinley Simpson, Robert Clewes and James Nixon went to the Brewer Tire Company at about 10:30 Sunday evening, January 28th; that he and Simpson gained entrance to the building and removed 10 tires and brought them to the car in which the other men waited. They then went to Pete Migliaccio's Tavern and sought to sell the tires to him, but he refused to buy them because he suspected something might be wrong. They picked up Vernon Skinner, took the tires to the home of Perkins' aunt and stored them, dropped Nixon off, and then went back to Brewers. Perkins and Simpson again entered the build-- ing, lined up more tires to take, and were looking for a television set when they were frightened off by the arrival of the police. They left the premises by the rear door and went back of some houses then out onto the street and north thereon to the corner and then into an alley and out again and finally hid in a doorway of the Utah Apartments where they were apprehended.

The statute relied on by defendant in urging his first point is Sec. 105-32-18, U. C. A. 1943:

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and with-

out the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient, if it merely shows the commission of the offense or the circumstances thereof."

In the case of *State* v. *Erwin*, 101 Utah 365, 120 P. 2d 285, 299, Mr. Justice Wade for this court, speaking of that statute, stated:

"This court has held this corroboration need not go to all the material facts testified to by the accomplice (*State* v. *Stewart*, 57 Utah 224, 193 P. 855); that the corroborative evidence need not be sufficient in itself to support a conviction; it may be slight and entitled to little consideration. *People* v. *Lee*, 2 Utah 441; *State* v. *Spencer*, 15 Utah 149, 49 P. 302. * * *

"On the other hand, the corroborating evidence must implicate the defendant in the offense and be consistent with his guilt and inconsistent with his innocence, and must do more than cast a grave suspicion on him, and all of this must be without the aid of the testimony of the accomplice. * * *"

See also *State* v. *Brunner*, 106 Utah 49, 145 P. 2d 302.

It is necessary to examine the evidence independently of the testimony of Perkins to see whether it meets the requirement of the above statute. This evidence shows that in the early morning hours of January 29, 1951, about 2:10 a. m., the police were summoned by special Officers Haskell and Jack Merrick to the Brewer Tire Company, located at 170 West on First South Street, to invesigate suspicious circumstances at that address. It had been and was snowing, and two sets of footprints could be seen going toward the rear of the building and also leading away from the rear door of the building. Eliminating the detail by which it was accomplished, it appears that Officer Wilbur Anderson and Special Officer Jack Merrick by following these tracks in the snow sighted these two men on the street; saw them go into an alley in the neighborhood; then observed one of them run and disappear near the front of the Utah Apartment house; Jack Merrick then ran there and caught the two men, who turned out to be the defendant and Paul

Perkins, hiding in the doorway. Simpson does not deny that he was on the corner with Perkins, nor that he ran and hid with him. His explanation that he was out of bed because his clock was faulty and he thought it was 4:20 a. m. and time for him to go to work, and that he saw Perkins on the corner and went up to join him just as the police came, seems highly improbable in view of the evidence and his actions just following their being seen on the corner together.

Flight and concealment immediately following the commission of a crime are both elements which may be considered as evidence of implication in that crime. See *State* v. *Marasco,* 81 Utah 325, 17 P. 2d 919; and Annotation 87 A. L. R. 767.

Other evidence exists which also ties this defendant to the burglary. On Sunday evening, before the burglary, between 7:00 and 8:00 o'clock, the defendant went alone to Pete Migliaccio, the tavern keeper, and asked if he would be interested in buying some tires. At about 11:30 the same evening, apparently after the first entry into the Brewer Tire Company, he returned to the back door of Migliaccio's Tavern and said: "I've got the tires." On this occasion there were other persons in the car with defendant but he was the one who talked to Migliaccio about the tires, the latter refusing to buy them.

About two and one-half hours later, that is at about 2:00 o'clock Monday morning, the defendant accompanied by the co-defendants, James Nixon and Robert Clews, sought to sell tires to one Henry Oliver (who will be referred to later) who also refused to buy the tires at that time. The next morning about 10:00 a. m. Nixon did sell some tires to Oliver. These tires were identified by Mr. Brewer as having been stolen from his store. Other tires were also recovered from the home of Perkins' aunt and identified by Mr. Brewer as his tires.

These attempts by the defendant to sell the tires, one of them with Nixon, who later sold the stolen tires add to the evidence tending to connect defendant with the crime. We conclude that there was ample evidence to corroborate the testimony of Perkins to meet the requirements of the statute hereinabove quoted and to render a conviction based on the evidence proper.

The conversation objected to under defendant's second point above, is one testified to by Henry Oliver. He said that Nixon came around about 10:00 the morning after the burglary and offered to sell him tires which he purchased; and that subsequently Nixon returned and took the tires to hide them after informing Oliver that Perkins and Simpson had been arrested.

We see no error in the admission of this evidence. It is true that ordinarily the conversations and declarations of a co-defendant out of the presence of the accused after the commission of a crime would not be competent. In the instant case, the scheme as revealed by the evidence consisted of a conspiracy to steal and sell tires, and the burglary was but one part of the scheme. As above recited, the defendant himself contacted Migliaccio both before and after the burglary and also approached Oliver for the purpose of disposing of the tires. Testimony of one of the accomplices made in an effort to carry out their plan was admissible against the defendant even though he was not present at the time. Defendant argues that admissions of conspirators are admissible only when the charge is conspiracy. This is obviously wrong. There can be, as there was here, a conspiracy between persons to engage jointly in other criminal offenses, and if this fact is shown by independent evidence, the statements of any of the conspirators made in furtherance of the common criminal purpose is unquestionably admissible against all. Such conduct in furtherance of the common design does not raise the same question as ordinary admissions or confessions.

In *People* v. *Suter*, 43 Cal. App. 2d 444, 111 P. 2d 23, 31, the court said:

"* * * It has been held that the common design of a criminal enterprise may extend in point of time beyond the actual commission of the act constituting the crime for which the accused is being tried, such as for the purpose of concealing the crime, securing the proceeds thereof, sharing in or dividing the proceeds of the crime, or bribing or influencing witnesses, and that consequently, evidence is admissible to prove acts committed after * * * the perpetration of the crime for which the accused is on trial. Of course, it must reasonaby appear that such acts were committed in furtherance of the common design of the conspiracy."

and in *State* v. *Erwin*, supra, this court said:

"Acts done by the conspirators in order to escape the consequences thereof, even though they at that time know that the conspiracy cannot continue, are nevertheless acts done in furtherance of the conspiracy. The fact that this act was done after the time limit placed in the indictment does not make it inadmissible, as long as it was in furtherance of the conspiracy."

See also: *State* v. *Scott*, 111 Utah 9, 175 P. 2d 1016; *State* v. *Inlow*, 44 Utah 485, 141 P. 530; *Thompson* v. *State*, 58 Ga. App. 593, 199 S. E. 568; *People* v. *Ross*, 46 Cal. App. 2d 385, 116 P. 2d 81; *People* v. *Lorraine*, 90 Cal. App. 317, 265 P. 893; and *State* v. *Hill*, 352 Mo. 895, 179 S. W. 2d 712.

As to the third point, while it is perhaps a better practice for the trial court to give a cautionary instruction regarding the testimony of an accomplice, it is generally held that this is a matter which lies within the discretion of the trial judge, and is not reversible error to fail to give such an instruction. *People* v. *Ruiz*, 144 Cal. 251, 77 P. 907; *Commonwealth* v. *Beal*, 314 Mass. 210, 50 N. E. 2d 14; *State* v. *Gaddis*, 131 N. J. L. 44, 34 A. 2d 735; *Gordon* v. *State*, 188 Miss. 708, 196 So. 507; *U. S.* v. *Block*, 2 Cir., 88 F. 2d 618; and *People* v. *Nathanson*, 389 Ill. 311, 59 N. E. 2d 677. The defendant did not make a written request for any instruction as required by Rule 51, U. R. C. P. The general instructions ordinarily given in criminal cases as

to the weight of testimony and credibility of witnesses were given. We find no prejudicial error in the failure of the court to give a specific cautionary instruction. Judgment is affirmed.

WOLFE, C. J., and WADE, McDONOUGH and HENRIOD, JJ., concur.