**The STATE of Utah, Plaintiff and Respondent,**

**v.**

**Joseph Paul FRANKLIN, Defendant and Appellant.**

**No. 18052.**

Supreme Court of Utah.

March 19, 1987.

---

David E. Yocom, Martin Verhoef, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

Defendant appeals from a conviction of two counts of first degree murder under U.C.A., 1953, § 76-5-202 (Supp.1986). We affirm.

On August 20, 1980, defendant, an avowed racist, shot and killed two black men who were jogging in Liberty Park with two white women. On March 4, 1981, a jury in the United States District Court for the District of Utah convicted defendant of violating the civil rights of his victims in contravention of 18 U.S.C.A. § 245(b)(2)(B) (1969). Defendant was sentenced to two life sentences. After the federal prosecution, defendant was charged and tried by the State of Utah for two counts of first degree murder. During that trial, the prosecution called Detective Jesse Baker as a witness. Detective Baker testified that he had interviewed defendant in Florence, Kentucky, after defendant had been arrested there on suspicion of possessing a stolen vehicle. Detective Baker said that defendant appeared unperturbed by questions concerning the stolen vehicle charge, but became emotional when he was questioned about the Utah murders. During a break in the questioning, defendant escaped through a window. At trial, defendant's counsel cross-examined Detective Baker at length and brought up two robberies in which defendant was a suspect at the time of the Kentucky arrest. Defense counsel chose to discuss the robberies in order to offer a motive, other than guilt in the Salt Lake murders, for defendant's escape. The jury in Utah district court convicted defendant, but was unable to reach a unanimous verdict for death. The trial judge therefore sentenced defendant to two consecutive life terms to be served at the end of the federal sentences.

Defendant appeals on two grounds: he claims first that his trial in state court after his conviction in federal court violated the prohibitions against double jeopardy contained in the United States Constitution and in the Utah Constitution and Code; he also asserts that the Utah district court erred in admitting evidence concerning his flight from custody in Florence, Kentucky.

*Double Jeopardy*

The fifth amendment of the United States Constitution provides that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb...." The Utah Constitution also prohibits double jeopardy. It states: "[N]or shall any person be twice put in jeopardy for the same offense." Utah Const. art. I, § 12. U.C.A., 1953, § 77-1-6(2)(a) provides similar protection. It states: "No person shall be put twice in jeopardy for the same offense." Common to all these provisions is the term "same offense." Defendant argues that the murders and the federal civil rights violations should be considered the same offense for purposes of double jeopardy. He contends that because the killings and the civil rights violations arose from the same event (his shooting of two men in Liberty Park on August 20, 1980), the double jeopardy clause bars his prosecution for the separate violations of law.

The prohibition against double jeopardy protects defendant against three things: prosecution for the same offense after acquittal, prosecution for the same offense after conviction, and the infliction of multiple punishments for the same offense. *State v. James*, 631 P.2d 854, 856 (Utah 1981) (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)).

Neither the state nor the federal double jeopardy clause is violated when a defendant is tried for different offenses arising out of the same incident as long as each offense requires proof of a fact that the

other does not and is therefore a separate legal offense. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *State v. Sosa*, 598 P.2d 342, 346 (Utah 1979); *see also State v. Thatcher*, 108 Utah 63, 71–73, 157 P.2d 258, 261–62 (1945). For example, writing a bad check and forgery are not the same offense even if both charges are premised on the same incident, because they are not defined by the same legal elements. *State v. Harris*, 30 Utah 2d 354, 355–56, 517 P.2d 1313, 1314 (1974).

■ Each of the offenses of which defendant has been convicted requires proof of facts that the other does not. In order to establish a violation of 18 U.S.C.A. § 245(b)(2)(B) (1969), a federal prosecutor must prove that a defendant, by threat or force, willfully injured, intimidated, or interfered with another person because of the other's race, color, or national origin and because he was enjoying a benefit, service, privilege, program, or activity provided or administrated by a state or a political subdivision of a state. In this case, the federal prosecutor proved that defendant had prevented his victims from using a city park because of their race. The state prosecutor proved that defendant violated U.C.A., 1953, § 76–5–202(1)(b) and (c) (1978) by intentionally or knowingly killing both victims at the same time or in a manner that endangered the lives of persons other than himself or his victims. Thus, the federal and state statutes under which defendant was convicted require proof of different elements and do not define the same offense. We note also that the two statutes have different purposes: the federal statute is intended to protect the rights of all citizens to enjoy the benefits of citizenship regardless of race; the Utah first degree murder statute is intended to punish those who intentionally or knowingly murder another person under certain enumerated aggravating circumstances. *See Bateman v. State*, 265 Ark. 307, 578 S.W.2d 216 (1979) (interpreting an Arkansas statute that codifies the *Blockburger* definition but adds a requirement that the two statutes must be intended to prevent substantially different types of harm); *see also Commonwealth v. Mascaro*, 260 Pa.Super. 420, 394 A.2d 998, 1000 (1978) (interpreting a Pennsylvania statute using the same language as the Arkansas statute).

■ Defendant's convictions are also separate offenses because they were imposed under the laws of different sovereigns.

The dual sovereignty doctrine is founded on the common law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct "offences." *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141 [142–43], 67 L.Ed. 314 (1922). As the Court explained in *Moore v. Illinois*, 14 How. 13, 19, 14 L.Ed. 306 (1852), "[a]n offence, in its legal signification, means the transgression of a law." Consequently, when the same act transgresses the laws of two sovereigns, "it cannot be truly averred that the offender has been twice punished for the same offense; but only that by one act he has committed two offenses, for each of which he is justly punishable." *Id.* at 20. *Heath v. Alabama*, —— U.S. ——, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985). *See also United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Screws v. United States*, 325 U.S. 91, 114–18, 65 S.Ct. 1031, 1041–44, 89 L.Ed. 1495 (1945) (Rutledge, J., concurring); *Westfall v. United States*, 274 U.S. 256, 258, 47 S.Ct. 629, 71 L.Ed. 1036 (1927).

■ Defendant asks us to abandon the dual sovereignty doctrine and hold that the State of Utah may not try him because he has already been tried by the federal government. Defendant offers two reasons why we should so hold: he argues that U.C.A., 1953, § 76–1–404 (1978) compels that result and that other state courts have properly chosen to curtail the right of

their states to try defendants who have already been tried by another sovereign. We are not persuaded by either argument.

U.C.A., 1953, § 76–1–404 provides:

If a defendant's conduct establishes the commission of one or more offenses within the concurrent jurisdiction of this state and of another jurisdiction, federal or state, the prosecution in the other jurisdiction is a bar to a subsequent prosecution in this state if (1) the former prosecution resulted in an acquittal, conviction, or termination of prosecution, as those terms are defined in section 76–1–403, and (2) the subsequent prosecution is for the *same offense or offenses.*

(Emphasis added.) As the discussion above indicates, the federal and state crimes do not constitute the same offense. Defendant cites cases from other jurisdictions in which courts have held that their statutes barred subsequent prosecutions. Those cases are all distinguishable because the statutory language they construe is broader than that contained in section 76–1–404, which uses the term "offense." When the legislature uses a word with a well-established legal meaning, we assume that the legislature is aware of that meaning and has used the word in its proper sense. Section 76–1–403, immediately preceding the section defendant relies on here, forbids state prosecution for "offenses" arising out of "the same criminal episode." This language, which differentiates between "offenses" in the strict *Blockburger-Sosa* meaning of that term and "criminal episodes," is indicative of the legislature's awareness of double jeopardy terminology and its intent to use that terminology precisely. It is therefore appropriate to view section 76–1–404 as a legislative codification of traditional double jeopardy interpretation. By contrast, the statutes from other jurisdictions that defendant insists are similar to section 76–1–404 do not use the term "offense," apparently thereby deliberately intending to expand the protection against double jeopardy to bar multiple trials of a defendant for the same criminal acts or incident. We note that courts interpreting these statutes have sometimes resorted to applying "same offense" analysis despite the language of the statutes. *See People v. Candelaria,* 139 Cal.App.2d 432, 294 P.2d 120 (1956) (interpreting a statute forbidding subsequent prosecution of a defendant who has already been tried for the same "act or omission"); *Riddle v. State,* 373 P.2d 832, 835 (Okla.Crim.App. 1962) (interpreting an Oklahoma statute using a "same offense" analysis to interpret the phrase "act or omission"); *State v. Lo Cicero,* 14 N.Y.2d 374, 200 N.E.2d 622, 624, 251 N.Y.S.2d 953, 956–57 (1964) (interpreting a statute using the phrase "act or omission" and applying "same offense" analysis); *State v. West,* 260 N.W.2d 215 (S.D.1977) (interpreting a statute prohibiting subsequent prosecutions founded on the same act or omission and although purporting to apply a same evidence test, using "same offense" analysis); *State v. Zimmerman,* 175 Mont. 179, 573 P.2d 174, 178 (1977) (interpreting a statute barring subsequent prosecutions when the second offense arose out of "the same transaction" that gave rise to the first offense for which the defendant was prosecuted); *Wilson v. State,* 270 Ind. 67, 383 N.E.2d 304 (1978) (interpreting a statute forbidding subsequent prosecution when the defendant has already been convicted or acquitted of "an *act* charged as a public offense" in another jurisdiction).

Defendant urges us to follow the lead of some state courts that have interpreted their state constitutions as barring prosecutions by the state after federal prosecutions. The Michigan and Pennsylvania courts have, for example, developed balancing tests to determine whether their state constitutions forbid subsequent prosecutions. *See People v. Cooper,* 398 Mich. 450, 247 N.W.2d 866 (1976); *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971). These courts allow prosecutions by the state only when the state's interests have not been "sufficiently protected," *Commonwealth v. Mills,* 286 A.2d at 642, or, to use the Michigan Supreme Court's phrasing, were not "vindicated fully." *People v. Cooper,* 247 N.W.2d at 871. In our view, these decisions place state judges in the dual role of a state prosecutor evalu-

ating the interests of the state and appellate courts reviewing the adequacy of the proceedings in the federal tribunal and presumably the efficacy of the federal penal and parole systems. While we do not think our constitution necessarily must be interpreted as granting exactly the same protections as the federal constitution, we also do not believe the balancing test approach is mandated by the Utah Constitution, nor are we convinced it would provide the salutary effects anticipated. Rather, it appears likely to lead to uncertainty on the part of prosecutors and defendants, which might well result in an increase in litigation and appeals respecting the dual-sovereignty principle. We are troubled also by the transitory nature of the protection offered the individual under this balancing test approach: it exists only when the interest of the state is perceived as weak, disappearing when the state's interest is perceived as great.

The courts of New Hampshire and Montana have been more sweeping in surrendering their states' sovereignty. They have held that a prior federal prosecution is a complete bar to a subsequent prosecution by the state. *See State v. Hogg*, 118 N.H. 262, 385 A.2d 844 (1978) (holding that the double jeopardy clause of the New Hampshire Constitution bars New Hampshire from retrying a defendant who has been acquitted in a federal prosecution; the court did not extend its ruling to cases, such as that at bar, in which the federal prosecution results in a conviction); *State v. LeCoure*, 158 Mont. 340, 491 P.2d 1228 (1971).

We do not agree with the above-described approach because it relinquishes unnecessarily the power of the state to try and punish those who break its laws. Under the rule urged by defendant, the State of Utah would be foreclosed from legitimate prosecutions by the errors, omissions, or inadequacies of federal prosecutions and would be unable to try even a defendant who had received a federal pardon or whose conviction was reversed by a federal appellate court because of an error in the federal trial. *See, e.g., State v. LeCoure*, 158 Mont. 340, 491 P.2d 1228

(1971) (defendant acquitted of federal charges based on assault of F.B.I. agent because federal prosecutor did not prove agent was acting within his official capacity at time of assault and double jeopardy barred state law assault charges). We note also that the approach urged by defendant, under which the federal prosecution would be treated as if it were a Utah proceeding, would allow the federal government to destroy Utah's right to try defendant merely by bringing defendant to trial for some minor lesser included offense. *See Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Defendant asks us to contrast the benefits to the state from the dual-sovereignty doctrine, which he deems slight, with the unfairness to the individual that may result from two trials. The protection against multiple trials perceived by defendant is largely illusory. Were we to hold that Utah could not try individuals because they had been previously tried in a federal court, we still could not prevent the federal government from trying individuals after they had been tried by Utah; we would thus be surrendering state sovereignty in exchange for a more theoretical than real gain in individual rights.

### Admission of Evidence Concerning Flight

Defendant complains of the trial court's decision to admit evidence concerning his flight from custody in Florence, Kentucky. At trial, the defense made a motion in limine to exclude the testimony of Detective Baker and another Kentucky police officer. After receiving a proffer of the evidence, the trial court rejected defendant's motion. Defendant claims that it was error to admit the evidence of flight because it was not probative and because it "required" him to elicit information on cross-examination concerning robberies in which defendant was a suspect. That information was apparently elicited in order to offer a reason for defendant's flight other than guilt in the Salt Lake murders. The trial court gave a cautionary instruction to the jurors warning them not to give too much weight to the mere fact of flight

without carefully considering other motives that may have influenced defendant.

 We have previously ruled that evidence of flight is probative. *See State v. Simpson*, 120 Utah 596, 236 P.2d 1077 (1951); *State v. Marasco*, 81 Utah 325, 17 P.2d 919 (1933). Defendant insists, however, that we have ruled that flight evidence is inadmissible when the accused is in custody under two or more distinct charges. He relies on *State v. Crawford*, 59 Utah 39, 201 P. 1030 (1921), for that proposition. In *Crawford*, we reversed the defendant's conviction because there was insufficient evidence to sustain the jury's verdict. In the course of that opinion, we were critical of allowing evidence of flight when it was the only evidence connecting a defendant with the commission of the offense. 59 Utah at 45, 201 P. at 1033. That decision should not be read as holding that such evidence is never admissible. In our decision in *State v. Bales*, 675 P.2d 573 (Utah 1983), we reviewed the differing attitudes of courts toward jury instructions concerning flight and determined that when there is ample evidence to justify a flight instruction, it is not error to give one so long as it instructs the jury that there might be reasons for flight that are fully consistent with innocence of the crime charged and that even if consciousness of guilt is inferred from flight, it does not necessarily reflect actual guilt. *Bales*, 675 P.2d at 575. Therefore, defendant's claim that it was error to admit evidence concerning his flight from custody in Florence must be rejected.

We note that our holding on this issue is in harmony with those of the Supreme Courts of Arizona, Kansas, and Washington. *See State v. Celaya*, 135 Ariz. 248, 660 P.2d 849, 857–58 (1983); *State v. Walker*, 226 Kan. 20, 595 P.2d 1098 (1979); *State v. Piche*, 71 Wash.2d 583, 430 P.2d 522, 524 (1967), *cert. denied*, 390 U.S. 912, 88 S.Ct. 838, 19 L.Ed.2d 882 (1968).

As to defendant's contention that he was forced to present evidence of other crimes to supply an alternative motive for his escape, we note that defendant's decision was merely a tactical choice and is not a proper basis for an assignment of error.

The judgment of conviction is affirmed.

HALL, C.J., STEWART, Associate C.J., and HOWE and ZIMMERMAN, JJ., concur.