2007 UT App 5

**STATE of Utah, Plaintiff and Appellee,**

v.

**Matthew Lee HARTER, Defendant and Appellant.**

**No. 20050919–CA.**

Court of Appeals of Utah.

Jan. 5, 2007.

---

William L. Schultz, Moab, for Appellant.

Mark L. Shurtleff, atty. gen., and Karen A. Klucznik, asst. atty. gen., Salt Lake City, for Appellee.

Before BENCH, P.J., GREENWOOD, Associate P.J., and THORNE, J.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Defendant Matthew Lee Harter appeals his convictions for unlawful detention, assault, and violation of a protective order. Defendant argues that his defense counsel rendered ineffective assistance by failing to object to (1) the State's comments during its closing argument about Defendant's flight from police officers; (2) a police officer's testimony about the age of the victim's bruises depicted in a photograph; (3) two jurors who were formerly represented by the prosecutor; and (4) admission of prior bad act evidence. Alternatively, Defendant argues that the trial court committed plain error by failing to instruct the jury that Defendant's flight from police officers does not necessarily reflect guilt; and that the trial court abused its discretion by admitting evidence of Defendant's prior bad acts. We affirm.

## BACKGROUND

¶ 2 Prior to March 2005, Nicole Hopping and Defendant lived together as a couple in Grand Junction, Colorado for about three and one-half months. On March 20, 2005, the Mesa County and District Court in Colorado issued a protective order prohibiting Defendant from having any physical contact with Hopping. The following week, on March 26, 2005, Defendant waited for Hopping at her father's apartment in Moab, Utah. Despite the protective order, Hopping let Defendant into the apartment. Defendant became angry with Hopping, accusing her of being unfaithful. Hopping attempted to leave the apartment, but Defendant took her keys, grabbed her, and threw her across the room. He told her to stay in the bed-

room. Hopping was in the bedroom for about five hours. Defendant stood in the doorway of the bedroom some of that time and when Hopping tried to leave the bedroom he threw her across the room. He also periodically went into the bedroom and threw objects at her, and hit, bit, and kicked her. After Defendant pinned her down and threatened to strangle her to death, Hopping managed to hit Defendant in the face. Defendant then took Hopping to his car and began to drive. At a stoplight, Hopping jumped out of the car, Defendant chased her, and she then climbed into the driver's side of the vehicle and succeeded in driving away. The entire incident extended into the early hours of March 27.

¶ 3 Subsequently, Hopping called the police from a convenience store. Officer Lopez interviewed Hopping and another police officer photographed her injuries. A few hours later, Officer Lopez, along with another police officer, attempted to locate Defendant. While at Hopping's father's apartment, the police officers spotted Defendant and asked him to stop and talk to them. Defendant immediately fled. Defendant was later arrested and charged with aggravated kidnapping, a second degree felony, *see* Utah Code Ann. § 76–5–301 (2003); assault, a class B misdemeanor, *see id.* § 76–5–102 (2003); and violation of a protective order, a class A misdemeanor, *see id.* § 76–5–108 (Supp. 2006).

¶ 4 A two-day jury trial followed. During voir dire, when questioned by the judge, two jurors indicated that they had been previously represented by the prosecutor in unrelated matters but would not be affected by the prosecutor's prior representation. Defense counsel further questioned the two jurors and they again indicated that they would not be biased. Defense counsel did not challenge either juror for cause.

¶ 5 Prior to trial and outside of the jury's presence, defense counsel stipulated to the fact that a protective order had been issued against Defendant one week before the incident in question. The State then argued for the admission of photographs depicting Hopping's injuries from an incident that took place with Defendant in Grand Junction, Colorado, in November 2004. The State also sought to admit photographs of Hopping that were taken at the police station on March 27, 2005, depicting bruises from a March 20, 2005 incident with Defendant, as well as injuries from the March 26–27 incident. The State maintained that the photographs were necessary to rebut Defendant's defense to the kidnapping charge by demonstrating that Defendant was able to keep Hopping in an unlocked room against her will because of her fear of being further injured by him. The trial court overruled defense counsel's objections to the State's requests for admission of both sets of photographs, stating that the probative value of the photographs was not substantially outweighed by the risk of any unfair prejudice to Defendant.

¶ 6 At trial, on direct examination of Hopping, the State asked her why she did not just leave the bedroom. Hopping responded that Defendant blocked the door. The State then inquired, "Was there a time in November [2004] when you were injured during a fight with [Defendant]?" Defense counsel objected and the trial court overruled the objection. Hopping explained that she and Defendant had a fight, the police were called, and she was taken to the hospital. The State, again over defense counsel's objection, asked Hopping to confirm that the photographs taken at the hospital in November 2004 accurately depicted her injuries.

¶ 7 Hopping also testified about the March 20, 2005 incident, referring to the photographs of her March 26–27 injuries. Hopping responded to questions about which bruises were caused by Defendant on March 20 and which resulted from the March 26–27 incident.

¶ 8 During direct examination of Officer Lopez, the State again referred to the March 27 photographs. Officer Lopez testified that Hopping told him that she had been "beaten up" by Defendant a week earlier and that a protective order had been issued against Defendant. Officer Lopez also stated that Hopping showed him which bruises were caused by Defendant that day, and which had occurred the week before. The State then asked Officer Lopez, "In talking about the older bruises, based on your training and

experience, would you say they were two days old? [A] week old? [T]he yellowing bruises[?]" Officer Lopez responded that "they appeared to be around a week old."

¶ 9 During closing argument, the State reminded the jury that Defendant had fled from the police officers on March 27, stating:

> Now what was [Defendant's] last and final act on the 27th? He—when he was confronted with law enforcement, when he had an opportunity to chat with law enforcement, he turned around and he ran off. And what does that tell you about him and what he was doing in Moab that day and his respect for the law and doing things the right way? That is what a guilty man does. And a guilty man runs, and that's what he did. And he got caught and now he's here today.

At the close of evidence, the trial court instructed the jury that they

> may consider evidence about [D]efendant striking ... Hopping on previous occasions. You may consider that evidence only as it may bear on [Hopping]'s effort or lack of effort to escape from [D]efendant. You may not consider it as tending to show that [D]efendant is a violent person and is therefore more likely to have kidnapped or assaulted [Hopping].

¶ 10 The jury subsequently entered a verdict of guilty on the assault and violation of protective order charges and, in place of kidnapping, on a lesser included charge of unlawful detention, a class B misdemeanor, see Utah Code Ann. § 76–5–304 (2003). Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 Defendant argues that he received ineffective assistance because his defense counsel failed to object to the State's comments at closing argument regarding Defendant's flight from the police officers; to Officer Lopez's testimony about the age of some of Hopping's bruises; and to the two jurors who were formerly represented by the prosecutor. "An ineffective assistance of counsel claim raised for the first time on

appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶ 12 In the alternative, Defendant argues that the trial court committed plain error by not sua sponte instructing the jury that Defendant's flight did not necessarily reflect guilt. A claim of plain error exists where there was no objection before the trial court and the defendant can demonstrate that: "(I) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the [defendant]." *State v. Cruz*, 2005 UT 45, ¶ 16, 122 P.3d 543 (quotations and citation omitted).

¶ 13 Finally, Defendant challenges the court's admission of Defendant's prior bad acts under rule 404(b) of the Utah Rules of Evidence. *See* Utah R. Evid. 404(b). "We review a trial court's decision to admit evidence under rule 404(b) for abuse of discretion." *State v. Bradley*, 2002 UT App 348, ¶ 12, 57 P.3d 1139. "[W]e [also] review the record to determine whether the admission of [prior] bad acts evidence was 'scrupulously examined' by the trial judge 'in the proper exercise of that discretion.'" *Id.* (third alteration in original) (quoting *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120 (citation omitted)).

## ANALYSIS

### I. Defendant's Flight From Police Officers

¶ 14 Defendant objects to the State's argument during closing that Defendant's act of fleeing the police officers indicates that he was guilty of committing the crimes charged. Specifically, he objects to the State's assertion: "And what does [the flight from police officers] tell you about him and what he was doing in Moab that day and his respect for the law and doing things the right way? That is what a guilty man does." Defendant asserts that the State misstated the law and that defense counsel should have therefore moved for a mistrial.[1] Defendant also main-

---

1. Because we determine that the law was not misstated, it is unnecessary for us to determine whether defense counsel rendered ineffective assistance for failing to file a motion for mistrial.

tains that defense counsel rendered ineffective assistance when he failed to propose a curative flight instruction, thereby prejudicing Defendant.

¶ 15 "With respect to any ineffectiveness claim, a defendant must ... demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment [and] that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92; *see also Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Respecting the first prong, Defendant must "rebut the strong presumption that 'under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Litherland*, 2000 UT 76 at ¶ 19, 12 P.3d 92 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

¶ 16 We discern that a curative flight instruction would have been appropriate because the undisputed evidence showed that Defendant fled when the police officers wished to speak to him, and that this interaction occurred only a few hours after Hopping gave a statement to the police. Further, the evidence does not suggest that Defendant had another motive to flee from the police officers. *See State v. Bales*, 675 P.2d 573, 575 (Utah 1983) (approving a flight instruction where there was "ample evidence" to justify giving one because the defendant's flight took place immediately after the police officer identified himself, as opposed to "evidence of flight [that] was slight or contradictory as to its motive."). Nevertheless, even though defense counsel *could* have requested a curative flight instruction, we are not persuaded that he demonstrated deficient performance for failing to do so. Rather, it could be construed as sound trial strategy for defense counsel to avoid drawing the jury's attention to the Defendant's flight from the police officers. *See State v. Holbert*, 2002 UT App 426, ¶ 59, 61 P.3d 291 (noting that foregoing a curative instructive was a reasonable trial tactic to avoid "further emphasiz[ing] the remark."). Although we need not address whether Defendant was prejudiced by the State's comments, we note that any advantage Defendant may have gained by requesting a curative flight instruction may have been offset by the attention drawn to Defendant's flight.

¶ 17 Defendant alternatively contends that the trial court committed plain error when it failed to sua sponte instruct the jury that there may have been other reasons for Defendant's flight and that even if the jury was able to infer guilt, his guilt may not have been for the crimes charged. *See State v. Howland*, 761 P.2d 579, 580 n. 1 (Utah Ct. App.1988) ("[T]he trial judge should have ... advised the jury that ... there may be reasons for flight fully consistent with innocence, and ... even if consciousness of guilt is inferred from flight it does not necessarily reflect actual guilt of the crime charged."); *accord State v. Franklin*, 735 P.2d 34, 39 (Utah 1987); *Bales*, 675 P.2d at 575. However, our case law does not require the trial court to give a curative flight instruction when none is requested. Instead, the cases only require that *if* such an instruction is requested, it must be given and must include the caveat of other possible non-incriminating reasons for flight. Thus, there is no plain error. *See State v. Tueller*, 2001 UT App 317, ¶ 9, 37 P.3d 1180 (requiring the defendant to show an error occurred, and that the error should have been obvious to the trial court).[2]

## II. Officer Lopez's Testimony

¶ 18 Defendant argues that defense counsel rendered ineffective assistance of

---

In weighing the sufficiency of evidence, the Utah Supreme Court has considered evidence of flight, along with other evidence, as "a circumstance of guilt." *State v. Marasco*, 81 Utah 325, 17 P.2d 919, 923 (1933); *see also State v. Franklin*, 735 P.2d 34, 39 (Utah 1987) ("[E]vidence of flight is probative."); *State v. Simpson*, 120 Utah 596, 236 P.2d 1077, 1079 (1951) ("Flight and concealment immediately following the commission of a crime are both elements which may be considered as evidence of implication in that crime.").

2. We also note that, as discussed in the previous paragraph, a sua sponte decision by the trial court to give a flight instruction may have prejudiced Defendant by calling attention to his actions.

counsel by failing to object to Officer Lopez's testimony about the age of Hopping's bruises. Defendant contends that Officer Lopez rendered a medical opinion, outside the bounds of lay testimony under rule 701 of the Utah Rules of Evidence, and that the State failed to properly qualify Officer Lopez as an expert under rule 702. *See* Utah R. Evid. 701, 702. Defendant maintains that Officer Lopez's testimony corroborated Defendant's prior bad acts and consequently affected the outcome of his assault charge.

¶ 19 It is true that the State did not qualify Officer Lopez as an expert witness under rule 702. *See id.* 702. It is also true that defense counsel did not object to the lack of expert witness qualification.[3] However, we need not determine whether Officer Lopez's opinion as to the age of Hopping's bruises was properly considered lay testimony because, even assuming defense counsel's performance was deficient for failing to object under rule 702, Defendant cannot satisfy the second *Strickland* prong. Defendant does not demonstrate that, even if defense counsel had objected and that objection was sustained, the absence of Officer Lopez's testimony as to the age of the bruises creates a reasonable probability of a different outcome at trial. Hopping testified about the age of the bruises, and the jury saw the photographs and was able to make its own judgment about the bruises. Therefore, we conclude that counsel was not ineffective for failing to object to Officer Lopez's testimony.

### III. Jurors' Alleged Bias

¶ 20 Next, Defendant argues that defense counsel was ineffective for failing to object to the two jurors who had previously retained the prosecutor in unrelated matters. Defendant argues that, despite the jurors' responses, they were inherently biased due to their prior attorney-client relationship with the prosecutor.

¶ 21 We presume that defense counsel failed to object to or remove the jurors for a "plausibly justifiable conscious choice or preference." *State v. Litherland,* 2000 UT 76, ¶ 25, 12 P.3d 92. This presumption is rebuttable only by a showing

> (1) that defense counsel was so inattentive or indifferent during the jury selection process that the failure to remove a prospective juror was not the product of a conscious choice or preference; (2) that a prospective juror expressed bias so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove that juror; or (3) that there is some other specific evidence clearly demonstrating that counsel's choice was not plausibly justifiable.

*Id.* (footnote omitted).

¶ 22 Defendant fails to rebut this presumption. Defense counsel proved to be attentive during the jury selection process because he questioned both of the jurors further about their relationship to the prosecutor and because he questioned and removed other jurors for cause. Also, the record does not demonstrate any strong or unequivocal bias of the two jurors. Defense counsel asked both of the jurors questions and moved on after they assured him they would remain unbiased. Possibly, defense counsel believed that the jurors would "assign[ ] more weight or credibility to testimony that tends to oppose the juror's own potential bias." *Id.* at ¶ 22. Finally, Defendant does not point to evidence that clearly demonstrates that counsel's choice was not plausibly justifiable.[4]

### IV. Prior Bad Acts

¶ 23 Finally, Defendant argues that defense counsel rendered ineffective assistance

---

3. We do not address the issue of whether Officer Lopez's testimony about the age of the bruises required qualification as expert testimony under rule 702. *See* Utah R. Evid. 702; *see also State v. Rothlisberger,* 2006 UT 49, ¶ 1, 147 P.3d 1176. Unlike *Rothlisberger,* there was no objection to the testimony on the basis that it constituted expert testimony. *See Rothlisberger,* 2006 UT 49 at ¶ 5, 147 P.3d 1176. Consequently, we apply the typical ineffectiveness of counsel criteria.

4. We believe, however, that this is a close call because prior legal representation by the prosecutor of potential jurors is highly questionable. It is only because defense counsel was so obviously engaged in the jury selection process that we defer to counsel's judgment in this case.

when he failed to object to the admissibility of Defendant's prior bad acts—in particular, to testimony about and photographs of physical abuse Defendant inflicted on Hopping in November 2004, and on March 20, 2005. In the alternative, Defendant asserts that the trial court abused its discretion by admitting the same prior bad act evidence under rule 404(b) of the Utah Rules of Evidence. *See* Utah R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

¶ 24 Defendant contends that evidence of the prior physical abuse was not offered for a proper, noncharacter purpose but instead to persuade the jury that Defendant had a propensity to commit the charged crimes. *See* Utah R. Evid. 404(b). In contrast, the State maintains that it offered Hopping's testimony to rebut Defendant's defense to the kidnapping charge, asserting that Hopping was not detained in the bedroom against her will because the door was unlocked. The State argued that Hopping's fear of Defendant, resulting from his prior acts of physical abuse, allowed him to detain her in an unlocked bedroom for five hours.

¶ 25 We first determine that defense counsel sufficiently objected to the prior bad act evidence to obviate the argument of ineffective assistance of counsel. Review of the record reveals that, before the start of trial, defense counsel clearly objected to both sets of photographs depicting bruises from the earlier incidents. Prior to the State's introduction of the photographs from that incident, defense counsel also objected to Hopping's testimony from the November 2004 incident. Furthermore, although defense counsel did not specifically object to Hopping's testimony regarding the March 20, 2005 incident, he did object to the photographs depicting those injuries, and the trial court made note of Defendant's pre-trial objection to those photographs.

¶ 26 In light of the trial court's admission of both sets of photographs, as well as the court's instruction to the jury to consider the prior bad acts only as they pertain to the kidnapping charge, we do not believe any further objection would have been suc-

cessful. "Failure to raise futile objections does not constitute ineffective assistance of counsel." *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546. Thus, "Defendant could not have been prejudiced by properly admitted testimony, so his ineffective assistance of counsel claim[ ] fail[s]." *Id.*

¶ 27 We turn now to the trial court's admission of the photographs and testimony relating to Defendant's prior bad acts under rule 404(b) of the Utah Rules of Evidence. Prior bad act evidence is admissible under rule 404(b) if the trial court determines that it is offered for a noncharacter purpose, it is relevant, and the probative value is not substantially outweighed by danger of unfair prejudice. *See State v. Bradley*, 2002 UT App 348, ¶ 18, 57 P.3d 1139; *see also* Utah R. Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *id.* 402 ("All relevant evidence is admissible . . . ."); *id.* 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). The trial court must consider this three-part analysis before admitting the evidence. *See Bradley*, 2002 UT App 348 at ¶ 19, 57 P.3d 1139 (citing *State v. Nelson–Waggoner*, 2000 UT 59, ¶¶ 18–20, 6 P.3d 1120). After reviewing the record, we conclude that the trial court scrupulously examined the prior bad acts evidence in light of the three-part analysis and properly exercised its discretion in admitting the evidence of Defendant's prior bad acts.

¶ 28 First, the trial court acknowledged that Hopping's testimony about her prior injuries was offered for the proper, noncharacter purpose of demonstrating Hopping's state of mind—her fear of Defendant. Rule 404(b) provides that evidence of other wrongs or acts may be admissible for noncharacter purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Utah R. Evid. 404(b). And the Utah Supreme Court has held that there may be other purposes not listed in the rule, such as

state of mind. *See State v. Bates*, 784 P.2d 1126, 1127–28 (Utah 1989) (affirming admission of the victim's testimony about the defendant's prior bad act because the testimony was offered to show the victim's state of mind—namely, her fear of the defendant).

¶ 29 Next, although not explicitly referring to rule 402, the trial court nonetheless analyzed the relevance of the prior bad act evidence when it determined that it would tend to show whether Hopping was detained against her will. A necessary element of kidnapping is whether "the actor intentionally or knowingly, without authority of law, and against the will of the victim detains or restrains the victim for any substantial period of time." Utah Code Ann. § 76–5–301. Therefore, the court instructed the jury that it could consider the prior bad act evidence only as it concerned Hopping's "effort or lack of effort to escape."

¶ 30 Finally, the prejudicial effect of Defendant's prior bad acts did not substantially outweigh their probative value. *See* Utah R. Evid. 403. When determining whether the probative value of prior bad act evidence is substantially outweighed by potential prejudice to a defendant, the trial court should consider factors known as the *Shickles* factors.[5] *See Bradley*, 2002 UT App 348 at ¶ 29, 57 P.3d 1139. The court need not identify each of the *Shickles* factors in its analysis as long as we can discern that it made a sufficient inquiry under rule 403. *See State v. Allen*, 2005 UT 11, ¶ 28, 108 P.3d 730, *cert. denied*, —— U.S. ——, 126 S.Ct. 60, 163 L.Ed.2d 85 (2005). In this instance, the court clearly evaluated the risk of prejudice to Defendant and determined that it did not substantially outweigh the probative value of the evidence.

¶ 31 Furthermore, our reading of the evidence demonstrates that each *Shickles* factor was met. We find Hopping's testimony

about the March 20, 2004 incident compelling. Also, Hopping was physically harmed by Defendant in both prior incidents. The incidents all occurred within a relatively short period of time. Additionally, there was no other evidence that could effectively demonstrate the victim's fear of Defendant, which was required to rebut Defendant's defense against the kidnapping charge. And finally, the degree to which this evidence roused the jury was minimal in light of Hopping's testimony of the events of March 26–27.

## CONCLUSION

¶ 32 Defendant's ineffective assistance of counsel claims fail because he has not demonstrated that defense counsel's failure to object to the State's closing argument was anything but sound trial strategy; that defense counsel's failure to object to the police officer's testimony about the age of bruises prejudiced him; that defense counsel's failure to object to the jurors was not a conscious choice; and that defense counsel failed to sufficiently object to prior bad act evidence. Defendant has also failed to show that the trial court plainly erred by not sua sponte giving the jury a flight instruction. Finally, Defendant has failed to convince us that the trial court abused its discretion by admitting prior bad act evidence under rule 404(b). Accordingly, we affirm.

¶ 33 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and WILLIAM A. THORNE JR., Judge.

---

5. The *Shickles* factors include "the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence will rouse the jury to overmastering hostility." *State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988) (quoting E. Cleary, *McCormick on Evidence* § 190, at 565 (3d ed.1984)).